THE ANACONDA et al. *v.* AMERICAN SUGAR
REFINING CO.

No. 649. Argued March 29, 1944.—Decided April 24, 1944.

*Mr. Cody Fowler* for petitioners.

*Mr. Henry N. Longley,* with whom *Mr. John W. R. Zisgen* was on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We granted certiorari because this case poses an important question arising under the United States Arbitration Act.[1] The question arises in these circumstances. The petitioner Smith-Rowland Company, Inc., as owner, chartered to the respondent, American Sugar Refining Company, the barge "Anaconda" for a voyage from Havana, Cuba, to Port Everglades, Florida. After arrival at the latter port, the respondent filed in a federal district court a libel in personam against the petitioner with a prayer for process of foreign attachment, and in rem against the vessel, which was seized by the marshal.

Smith-Rowland Company, Inc., appearing specially, excepted to the jurisdiction of the court, relying on a provision of the charter party which was: "Any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration at the final place of discharge . . . pursuant to the provisions of the United States Arbitration Act . . . *except that the provisions of Section 8 thereof shall not apply to any arbitration hereunder.*" (Italics supplied.)

Section 8 of the Act is: "If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel . . . according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

The court treated the petitioner's exception as a motion to dismiss, and ordered dismissal [2] on the ground that it was competent to the parties, while availing themselves of the

---

[1] Act of February 12, 1925, c. 213, 43 Stat. 883; Title 9 U. S. C.
[2] 48 F. Supp. 385.

provisions of the Act rendering arbitration agreements enforceable in courts of admiralty, to preclude resort to the usual process of seizure as security for compliance with any arbitral award. The respondent appealed from the order, and the parties entered a stipulation for value pursuant to which the barge was released from the marshal's custody. The Circuit Court of Appeals reversed the judgment.[3] We hold its action was right.

Within the spheres of its operation,—maritime transactions and transactions in commerce, interstate and with foreign nations,—the Arbitration Act rendered a written provision in a contract by the parties to such a transaction, to arbitrate controversies arising thereout, specifically enforceable. Thereby Congress overturned the existing rule that performance of such agreements could not be compelled by resort to courts of equity or admiralty.[4]

After declaring (§ 2)[5] such agreements to be enforceable, Congress, in succeeding sections, implemented the declared policy. By § 3 it provided that "if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial . . . until such arbitration has been had" if the applicant is not in default in proceeding with such arbitration. The section obviously envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate. And, it would seem there is nothing to prevent the plaintiff from commencing the action by attachment if such procedure is available

---

[3] 138 F. 2d 765.

[4] See *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; 120–121, 123.

[5] The sections have the same section numbers in Title 9 of the United States Code.

under the applicable law. This section deals with suits at law or in equity. The concept seems to be that a power to grant a stay is enough without the power to order that the arbitration proceed, for, if a stay be granted, the plaintiff can never get relief unless he proceeds to arbitration.

Section 8, that with which we are especially concerned, deals with the admiralty jurisdiction. It has already been quoted. If the cause of action is one cognizable in admiralty, then, though the parties have agreed to arbitrate, *"notwithstanding anything herein* [i. e. in the Act] *to the contrary,"* the party claiming to be aggrieved may begin "his proceeding hereunder by libel and seizure," "according to the usual course of admiralty proceedings," and the court may direct the parties to proceed with arbitration and retain jurisdiction to enter its decree on the award. Here again the Act plainly contemplates that one who has agreed to arbitrate may, nevertheless, prosecute his cause of action in admiralty, and protects his opponent's right to arbitration by court order. Far from ousting or permitting the parties to the agreement to oust the court of jurisdiction of the cause of action the statute recognizes the jurisdiction and saves the right of an aggrieved party to invoke it.

Finally we turn to § 4, which permits "a party aggrieved by the alleged failure" of his opponent to arbitrate as agreed, to petition any federal court of appropriate jurisdiction at law, in equity or in admiralty, for an order directing that arbitration proceed. Provision is made for framing an issue and trying it as to whether the parties are bound to arbitrate and the entry of an order accordingly. From this provision it is clear that the parties may proceed in an admiralty case without the customary libel and seizure. And it has been so held.[6]

---

[6] *The Aakre,* 21 F. Supp. 540.

Section 8 says the aggrieved party, "notwithstanding" the right granted by § 4, may begin a suit in admiralty by libel and seizure. Our question is whether the Act contemplates or permits consensual elimination of the procedure thus saved by the Act and contractual confinement of the aggrieved party's resort to a court to a petition for an order to arbitrate under § 4. We think the answer must be in the negative. Congress may have thought it wise not to raise doubts under the admiralty clause of the Constitution. It may have thought that in many causes in admiralty if the aggrieved party could not seize the ship of his opponent, an arbitral award would be wholly unenforceable as the vessel might seldom or never again be within the jurisdiction of our courts. But, whatever its reasons, Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court.

It is enough that Congress has so declared. We think a party can not stipulate away such a jurisdiction which the legislation declares open as heretofore.

The judgment is

*Affirmed.*