**INTERNATIONAL REFUGEE ORGANIZATION v. REPUBLIC S. S. CORP.**

No. 3132.

United States District Court
D. Maryland.

Oct. 30, 1950.

Shea, Greenman, Gardner & McConnaughey and Francis M. Shea, of Washington, D. C., and L. Vernon Miller and Franklin G. Allen, of Baltimore, Md., for International Refugee Organization.

Ober, Williams, Grimes & Stinson and Southgate L. Morison, of Baltimore, Md., and Nathaniel J. Ely, Washington, D. C., for Republic S. S. Corp.

COLEMAN, Chief Judge.

This is a proceeding in admiralty commenced by a libel in personam filed by International Refugee Organization, a specialized agency of the United Nations, having its principal offices in Geneva, Switzerland, hereinafter referred to as I. R. O., against the Republic Steamship Corporation, a Panamanian corporation, with principal place of business in the City of Panama, Republic of Panama, hereinafter referred to as Republic.

The libel alleges that Republic failed, pursuant to the terms of a charter agreement which it had entered into with I. R. O.'s predecessor, The Preparatory Commission For The International Refugee Organization (referred to in the charter party as PCIRO), to deliver the steamship San Francisco, a Panamanian cargo vessel of 11,079 gross tons, into the service of I. R. O.; that Republic made false representations to I. R. O. with respect to ownership of the vessel and its alterations and repairs; that I. R. O. made an advance of $840,000.00 to Republic to be used only for certain specific purposes, whereas a large part of this advance was improperly used for other purposes and that no part of this sum has been repaid to I. R. O. The libel also alleges that the charter required delivery of the steamship San Francisco to I. R. O. by October 25, 1948, but that Republic has failed to do so.

A writ of foreign attachment issued in connection with the libel and there is now in the registry of this Court, subject to this attachment, $8464.55, being the proceeds from sale of oil, and $8116.99, being the proceeds from disposition of stores supplied to The San Francisco. Intervening claims were filed against these funds by some of the officers of The San Francisco, but these claims were satisfied under a settlement with the vessel's officers and crew. No other claims, if they exist, against these funds are now before this Court for adjudication. So the questions for decision relate only to I. R. O.'s claim to these funds. The libel was filed March 2, 1949. Republic's first responsive pleading was a petition, filed simultaneously with Republic's answer, to refer all questions in dispute, raised by the libel, to arbitration, pursuant to paragraphs 33 and 34 of the charter and to stay all proceedings until arbitration had been concluded. These paragraphs are as follows: 33—"Any dispute arising under this Agreement will be referred to arbitration in London, one Arbitrator to be nominated by the Owner and the other by PCIRO, and in case the Arbitrators shall not agree, then to the decision of an umpire to be appointed by them, the award of the Arbitration or the umpire to be final and binding upon both parties." 34—"The Interpretation of the Agreement shall be governed by the Law of England."

This Court heard the petition for arbitration but postponed a decision and ordered this proceeding consolidated and

heard with a pending admiralty suit in rem, which had been brought by The Maryland Drydock Company against the San Francisco to enforce a lien for labor and repairs furnished in converting the vessel from a cargo carrier to a passenger vessel. In this suit there was a cross libel by Republic against the Drydock Company, and I. R. O. filed an intervening libel, claiming that it had two liens against the vessel, (1) maritime and (2) equitable. This Court required the consolidation of the two cases for the following reasons: The maritime lien asserted by I. R. O. in the in rem proceeding was claimed to be on a parity with the Drydock Company's lien to the extent of some $300,000.00, the basis for this latter claim being the same as that on which the libel in this present proceeding is based, namely, that I. R. O. had advanced $840,-000.00 to Republic for specific purposes, that is, for the conversion and reconditioning of The San Francisco pursuant to the terms of the charter of the vessel by Republic to I. R. O.; whereas, due to misrepresentations on the part of Republic as to the ownership and condition of the vessel, I. R. O. had been misled into advancing these funds and that, therefore, in the in rem proceeding brought by the Drydock Company against the vessel, I. R. O. should be allowed to trace into the vessel and to have a lien on her, for so much of those funds as represented amounts actually invested in material and supplies for the vessel. As respects the equitable lien, I. R. O.'s claim was for the balance of the $840,000.00 or roughly, $500,000.00, and was based upon the same ground as the alleged maritime lien, namely, misrepresentation and fraud on the part of Republic in obtaining the funds from I. R. O.

After lengthy hearing, this Court allowed to the Drydock Company a lien for the full amount of its claim for repairs and conversion of the vessel, approximately $798,-000.00, and denied any lien, either maritime or equitable, to I. R. O. This Court did not, however, in this consolidated proceeding pass upon the question of arbitration, concluding that it was appropriate to withhold any decision thereon until it had been afforded the benefit of additional briefs on behalf of I. R. O. and Republic. In other words, although, for the reasons above explained, the present proceeding was consolidated with the in rem proceeding, and although it was agreed by all parties concerned that the testimony adduced in the consolidated proceeding would cover both cases, this Court excluded from its opinion and decree any ruling on the question of arbitration as between I. R. O. and Republic, confining its rulings to the question of the right to a lien or liens against the vessel, and the amount thereof as between I. R. O. and the Drydock Company. See, D.C., 94 F.Supp. 234. On appeal, the Court of Appeals affirmed this Court's decree to the aforegoing effect. See I. R. O. v. Maryland Drydock Company, 4 Cir., 179 F.2d 284.

It will thus be seen that the rights of I. R. O. as well as of the Drydock Company with respect to any liens on The San Francisco were completely and finally adjudicated in the in rem proceeding. In the present suit, I. R. O. asserts the same misconduct, i. e. fraudulent misrepresentation and breach of the charter agreement, on the part of Republic that it did in the in rem proceeding but invokes a different form of remedy, i. e., an in personam proceeding with writ of foreign attachment; and I. R. O. also asserts that it is entitled to additional damages or reimbursement because of additional acts done by Republic in violation of the charter agreement. Republic, on the other hand, claims that whether or not I. R. O. is entitled to any recovery on any ground in the present proceeding is a question that must be determined by arbitration, pursuant to the provisions for arbitration, heretofore quoted, embodied in the charter agreement. No testimony has been taken by either party in this proceeding. They stand, insofar as concerns the question whether or not arbitration is required of the questions raised by the libel, upon the testimony taken in the consolidated proceeding where no evidence was in fact separately introduced by Republic. Precisely what I. R. O. is claiming can therefore best be understood by a full analysis of its libel.

The libel asserts that, under the charter, Republic, representing itself as the owner of The San Francisco, hired the vessel to I. R. O. for a period of twelve calendar months from the date on which the vessel was delivered and placed at I. R. O.'s disposal at Bremerhaven, Germany, the charter providing that such delivery should be accomplished between September 25th and October 25th, 1948; that Republic, in the charter, warranted that the vessel would steam about fifteen knots in good weather, whereas she was not capable of doing so; that Republic further represented that on July 30, 1948, the vessel was undergoing alterations, which representations were false and known so to be by Republic at the time they were made, the purpose being to induce I. R. O. to execute the charter, and make, pursuant thereto, advances to Republic in the amount of $840,000.00.

The libel further alleges that pursuant to the charter, Republic, as owner of the vessel, was obligated to effect insurance of her on behalf of I. R. O. equal to the advances as aforesaid which were to be reimbursed by deductions from payments of hire; that these advances were agreed to be made by I. R. O. to Republic conditioned upon their being used for repairing, converting and refitting the vessel as an immigrant carrier; for the purchase of daily provisions, seastocks and other supplies, including consumable and non-consumable stores, and for the cost of assembling a crew and the payment of their wages until the vessel should commence operations under the charter; that the $840,000.00 thus agreed to be advanced was to be made available to Republic only upon certain specified conditions, and by the establishment of a letter of credit through the Westminster Bank Ltd., foreign branch office London, with the Bank of America, San Francisco, California; that these advances were drawn down and received by officers or agents of Republic through misrepresentations regarding ownership of the vessel and the availability to Republic of other funds to carry out its obligations under the charter; that the funds came into possession of Republic prior to the time that it was the owner of the vessel; that a part thereof, *i. e.*,

approximately $465,000.00, was used by Republic for the purchase of the vessel, and that the amount of such advances which were used by Republic after it became owner of the vessel for purposes authorized under the charter did not exceed $300,000.-00; that as a result of the in rem proceeding which resulted in The San Francisco's arrest by the United States marshal on December 13, 1948, and also by reason of the alleged wrongful breaches of the charter party by Republic, I. R. O. has been unable to arrange urgently needed transportation for displaced persons from various ports in Europe to various countries throughout the world; that I. R. O. has incurred large overhead expense in the maintenance, support and care of displaced persons and has spent large sums in an endeavor to arrange suitable substitute transportation; that the charter party provides that in the event delivery of The San Francisco should be delayed beyond the 25th day of October, 1948, Republic would become liable to I. R. O. in the sum of $2500.00 for each day beyond that time until the vessel should be delivered to I. R. O.; that as of February 28th, 1949, the sum due and owing I. R. O. from Republic as liquidated damages for the wrongful breach of the charter party amounted to $340,000.00; that on the above date, I. R. O. notified Republic in writing that by reason of its serious default and breaches of the charter party through failure to deliver the vessel as required, such default having continued for more than four and a half months, and because of no apparent prospect that the vessel would be delivered in the discernible future, I. R. O. considered itself relieved of any further obligations to perform its part under the charter agreement and demanded the return of the advance of $840,000.00, and also the additional sum of $340,000.00 as liquidated damages for breach of the charter agreement, or a total of $1,180,000.00 with interest, no part of which has been paid.

In its petition praying that this Court pass an order referring all questions of dispute under the charter agreement to arbitration and that it dismiss the libel or, in the alternative, stay any further proceed-

ings until these questions have been arbitrated, Republic admits that numerous disputes have arisen with respect to (1) ownership of the vessel; (2) the use to which the funds advanced by I. R. O. to Republic were used by the latter; (3) whether failure of Republic to release The San Francisco from the lien of the Drydock Company was due to unjustified conduct on the part of I. R. O.; (4) whether I. R. O. has otherwise breached the charter agreement and has no right to cancel it as it has attempted to do; (5) whether either party is indebted to the other and if so, in what amount; and (6) whether I. R. O. is entitled to a lien on the vessel or her proceeds for the amount of charter hire which it advanced.

In its answer, filed simultaneously with its petition to refer all of these disputed questions to arbitration, Republic admits that a part (approximately $475,000.00) of the sum of $840,000.00 advanced to it by I. R. O. was used to purchase The San Francisco, but denies that there was any agreement restricting the use of any part of this advance, alleging that the insurance which Republic agreed to effect was in the amount of $840,000.00 to protect this advance; to cover the loss of freight that might be caused by loss of the vessel, and also to cover war risks, strikes, civil commotion, or malicious damage. Republic further denies that there was any fraud or improper collusion exercised in obtaining the advance. Republic alleges that from the inception of the discussions had with I. R. O. with respect to the contents of the charter agreement, I. R. O. was informed that sufficient funds would have to be raised by Republic in order for it to purchase, convert and fit a ship for the performance under that agreement; that I. R. O. was first asked to advance the entire charter hire in the form of a letter of credit or bank guarantee, payable monthly, so that Republic would thereby be able to raise sufficient funds to purchase a vessel; that I. R. O. replied that it was not permitted to issue such letter of credit or bank guarantee, whereupon Republic requested an advance of not less than $1,500,000.00 in order to purchase The San Francisco, convert her and cover the other expenses

in connection with the charter, but that I. R. O. finally announced that $840,000.00 was the maximum amount which it could advance; that for these reasons I. R. O. realized at all times that such advance would not be sufficient to purchase the vessel and put her in the necessary condition for operating under the charter agreement, and accordingly, realized that Republic would have to raise additional funds; that in January, 1949, Republic informed I. R. O. that it was prepared to release The San Francisco from the libel of the Maryland Drydock Company and put the vessel in operation under the charter agreement but I. R. O. refused to accept the vessel in accordance with the terms of that agreement and informed Republic it would only accept the vessel if Republic agreed to certain material changes in the charter, one of which was a reduction in the charter hire; and that by taking this position I. R. O. had made it impossible for Republic to obtain the vessel's release, to the latter's great damage.

Republic in its answer further admits that The San Francisco has not yet been delivered to I. R. O. but relies upon the fact that the charter agreement contains no cancellation clause and provides that the charter period shall be twelve calendar months from the date that the vessel is delivered and placed at the disposal of the charterer; and further provides that the charterer is entitled to certain payments in the event that the vessel is not delivered between September 25 and October 25, 1948, and that, therefore, I. R. O.'s sole remedy for Republic's failure to make the delivery between these dates is its right to recover stipulated payments and that the charter party still remains in full force and effect. Republic's answer further alleges that, pursuant to an agreement which it has with I. R. O., in the event it, Republic, recovers damages from the Drydock Company in its in rem admiralty proceeding, then it will pay to I. R. O. the amounts agreed upon, but that if Republic is unsuccessful in such suit, then, in accordance with its agreement with I. R. O., it is not required to make any payments. Finally, as respects the question of arbitration, Re-

public alleges that it desires to have all the disputes which have arisen under the charter agreement referred to arbitration, but that pursuant to paragraphs 33 and 34 of the agreement, such arbitration must take place in London; that all interpretation of the agreement under such arbitration must be governed by the law of England, and that Republic is ready and willing to appoint its arbitrator and to proceed with the arbitration in London.

From this analysis of the pleadings in the present case, and from the testimony that was adduced in the consolidated proceeding which bears upon this subject matter, it is clear that the question whether there was any fraud on the part of Republic in obtaining the advance of $840,000.00 or any part of it from I. R. O., or any improper use of same after being obtained, was fully presented and decision made thereon by this Court, and by the appellate court in its affirmance of this Court's decree. In other words, the fraud issue here presented is precisely the same as that presented when the question was determined in the in rem proceeding whether I. R. O. had any lien on the vessel by reason of Republic's alleged fraudulent conduct in obtaining and using the I. R. O. advances. It was agreed by both I. R. O. and Republic that in the consolidated proceeding they would submit such testimony as they might have with respect to this question of fraud. And so, while all that was decided in the consolidated proceeding as respects I. R. O. was that it had no lien against The San Francisco, nevertheless, the facts that were developed and the conclusions reached by this Court and affirmed by the appellate court with respect to those facts, compel the same negative answer as respects any right by process of foreign attachment to the proceeds from either (1) the vessel's oil or (2) the vessel's stores.

This Court in the in rem proceeding found, and so stated in its opinion, that there was no agreement that the advance made by I. R. O. should be used by Republic for specified purposes, as claimed by I. R. O., but that the advance was a general one, to be used by Republic as it saw fit. Similarly, while this court in its opinion in the

in rem proceeding did not make reference to a specific, separate finding as to whether or not I. R. O. had acted upon the belief that Republic owned the steamship San Francisco and that she was undergoing alterations and repairs at the time the advances were agreed upon, nevertheless, as the opinion points out, the main ground on which I. R. O. based its claim to a maritime lien in that proceeding was that the charter agreement was obtained by Republic through misrepresentations on which I. R. O. relied as to Republic's ownership of the vessel and her alterations, and this court found that the weight of the credible evidence did not support I. R. O. in any part of its claim of misrepresentation. Had the contrary been the case, this court would not have denied I. R. O. a lien and would not have dismissed its intervening libel.

Thus, all of the same questions of alleged fraud or misrepresentation on Republic's part that are raised in the present proceeding were raised and answered in the negative in the in rem proceeding, and therefore have become res adjudicata. Accordingly, the only question that remains for decision in the present proceeding is whether the arbitration provisions in the charter agreement are valid and enforceable in London according to British law, and if so, whether further proceedings in this court should be stayed pending arbitration as so provided.

As respects the validity of the arbitration provisions in the charter, the law is well established that a provision for arbitration outside the United States embodied in a contract such as that in the charter in the present case, is valid and that this Court, upon petition of one of the parties, has authority to stay the litigation pending a conclusion of the arbitration abroad. Such follows directly from Section 3 of the United States Arbitration Act, 9 U.S.C.A. § 3, which provides "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under

such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

The Supreme Court, in Shanferoke Co. v. Westchester Co., 293 U.S. 449, 55 S.Ct. 313, 314, 79 L.Ed. 583, in interpreting this section of the Act, held there was no reason to imply that the power to grant a stay was conditioned upon the existence of power to compel arbitration in accordance with Section 4 of the Act. The arbitration agreement in that case contained the provision that "either party may apply to the Supreme Court of the State of New York for an order compelling the specific performance of this arbitration agreement in accordance with the arbitration laws of the State of New York." The District Court was not asked to compel specific performance, but merely to stay the action until arbitration was had, which it refused to do, having interpreted the arbitration as enforceable only in state courts of New York. The Court of Appeals reversed, and the Supreme Court affirmed the reversal.

A similar situation was before this court in Danielsen v. Entre Rios Rys. Co. Ltd., D.C., 22 F.2d 326. There, the master of a Norwegian vessel entered into a charter in London with the agents of South American charterers for the carriage of coal from Baltimore or a near-by port, to South America. The charterers were to notify the master before arrival at just what port he should load. The charter provided that "any question arising under this charter shall be referred to arbitration in London in the customary manner." The charterers failed to give the master the requisite advance notice as to place of loading, with the result that he was forced to detain the vessel at Norfolk for a day, awaiting orders, which were to proceed to Baltimore to load, and he did. He claimed to have been damaged by the delay and filed a libel in personam with writ of foreign attachment. Respondents excepted to the libel on the ground (1.) that arbitration was a condition precedent to this court's assumption of jurisdiction, and (2) that since all parties to the suit were foreigners, they were not entitled, as a matter of right, to be heard. But this court found no merit in either contention and overruled the exceptions, stating that the assumption of jurisdiction was within the discretion of this court and that, although it could not order arbitration since it was to be conducted in London, it, nevertheless, had authority under Section 3 of the United States Arbitration Act to stay all further proceedings until arbitration had taken place. See also, American Locomotive Co. v. Chemical Research Corp., 6 Cir., 171 F.2d 115; La Nacional Platanera, S. C. L. v. North American Fruit and Steamship Corporation, 5 Cir., 84 F.2d 881.

It is idle for I. R. O. to contend that the disputes that have arisen under the charter are not arbitrable. These disputes involve (1) warranty respecting The San Francisco's speed, her passenger capacity and fuel oil consumption; (2) whether I. R. O. has performed its obligations under the charter and has a right to cancel the charter; and (3) to what extent, if any, is either party indebted to the other. All of these are proper subjects for arbitration. They all involve factual questions. As respects the question of charter cancellation, the charter in suit contains no cancellation clause, and while, in the absence of such clause, a charterer may have no right to cancel merely for delay in delivery of the vessel according to the terms of the charter, unless the delay is so great as to frustrate the adventure, the question as to whether frustration has actually occurred is a factual one and subject to arbitration. Similarly, the fact that The San Francisco never actually went into operation under the charter is no defense against arbitration. In the prior in rem proceeding this Court held the charter valid. Refusal to deliver, amounting to total non-performance, does not nullify the requirement for arbitration. Section 2 of the United States Arbitration Act, 9 U.S.C.A. § 2, provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such con-

tract or transaction, or the refusal to perform the *whole* or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis supplied.)

In the case of In re Pahlberg Petition, 2 Cir., 131 F.2d 968, under the terms of the charter a vessel was to be placed at the disposal of the charterer between certain specified dates, but was never delivered. It was held that the failure of the vessel's owners to deliver her pursuant to the charter, even though amounting to total nonperformance thereunder, did not deprive the charterer of the right, under Section 2 of the Act to have the question of the owner's failure to deliver submitted to arbitration, under a provision in the charter that should "any dispute" arise between the parties, the matter should be referred to arbitration.

Without arbitration, Republic has no remedy in the United States because I. R. O. is immune from suit in this country by the International Organizations Immunities Act, 22 U.S.C.A. Sec. 288a(b), unless I. R. O. is to be considered as having waived this immunity by bringing the present suit, which is at least open to doubt, depending upon whether I. R. O. is to be considered an agency of a foreign sovereignty immune to an affirmative judgment without its express consent. See Kingdom of Roumania v. Guaranty Trust Co., 2 Cir., 250 F. 341, certiorari denied 246 U.S. 663, 38 S.Ct. 333, 62 L.Ed. 928. Thus the arbitration clause in the present charter is vitally important to Republic. Whether or not its full significance was recognized by the parties at the time the charter was executed, does not appear nor is this controlling. Nor is this court advised as to whether I. R. O. is subject to suit in England. But the fact that the charter provides (paragraph 34) that it shall be interpreted according to the law of England is a further, logical reason for providing for arbitration in London. While this court cannot compel arbitration there

or anywhere else, it can and should stay proceedings until it does take place. This is in conformity with Section 4 of the United States Arbitration Act which provides that "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof", and "* * * if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue." That is to say, provision is made for framing the issue, and trying it, as to whether the parties are bound to arbitrate, and for the entry then of an order according to the court's finding. See The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117.

For the reasons herein stated, a decree will be signed declaring valid the arbitration provisions in paragraphs 33 and 34 of the charter agreement between the parties, and staying all further proceedings in this court pending arbitration pursuant to those provisions, libellant to pay the costs of the proceedings to date.