### ALBATROSS S. S. CO., Inc. v. MANNING BROS., Inc.

No. 63-148.

United States District Court
S. D. New York.
Jan. 10, 1951.

Hunt, Hill & Betts, New York City (George Whitefield Betts, Jr., Helen Tuohy and George S. Bernhard, all of New York City, of counsel), for petitioner.

Kirlin, Campbell & Keating, New York City (Charles R. Hickox, James H. Herbert, New York City, of counsel), for respondent

WEINFELD, District Judge.

Petitioner, Albatross Steamship Company, Inc., instituted this proceeding for an order directing Manning Brothers, Inc., the respondent, to proceed to arbitrate a dispute between the parties under a charter party. The petitioner, hereinafter referred to as Albatross, also seeks an order restraining said Manning Brothers, Inc., hereinafter referred to as Manning, from taking any steps to take possession of the vessel, SS Yankee Fighter, or interfering with the operation of said vessel under said charter party or the performance thereof until a decision of the arbitrators shall have been rendered.

Albatross is a New York corporation and Manning a Delaware corporation.

On June 5th, 1950, Albatross and Manning entered into a bareboat charter party whereby Manning, as owner, let to Albatross, the charterer, the SS Yankee Fighter for a period of about seven to about ten months from the date of delivery with an option to Albatross of continuing the charter for a further period of about three to about five months.

Delivery of the vessel was made by Manning to Albatross on June 10th, 1950, and thus Albatross was entitled to possession of

the vessel for a period expiring no earlier than about January 10th, 1951, to about April 10th, 1951, and in the event it exercised its option, for a further period of about three to about five months thereafter. From the date of delivery to the present, the charterer has been engaged in carrying cargo between the United States and European ports.

Clause 29 of the charter party provides for its termination "in case of war involving the U.S.A." On August 15th, 1950, by written communication, Manning undertook to terminate the charter, contending, "war has been carried on in Korea since the latter part of June and has involved, and still involves, the U.S.A. * * *"

As was to be expected, Albatross denied that the United States was involved in war and contended that the President had officially declared that the action in Korea is merely a "police action" pursuant to the provisions of the United Nations' Charter. Albatross' resistance to the attempted termination of the charter party was set forth in a written response dated August 17th, 1950.

The charter party provides that should any dispute "arise between Owner and Charterer, the matter in dispute shall be referred to three (3) disinterested commercial men, one (1) to be appointed by each of the parties hereto and the third by the two (2) so chosen, and the decision of any two (2) of them shall be final." (Clause 19)

Although the charterer replied forthwith to Manning's attempt to terminate the contract, no immediate action was taken by Manning. It allowed the matter to rest for a period of more than three and one-half months, until November 30th, 1950, when it notified Albatross that it considered its letter of August 17th, 1950, a refusal to agree to its contention and, accordingly, sought arbitration under Clause 19, appointed its arbitrator and requested Albatross to do likewise so that the two could agree upon the third arbitrator. Three weeks thereafter, on December 22nd, 1950, in response to this demand, Albatross appointed one John F. Fitzsimmons.

Thereafter, and apparently without any contact between the parties and disregarding the designation by Albatross of its arbitrator, Manning notified Albatross that on the arrival of the vessel in the United States it would take possession of her. The purported basis for this contemplated action was that the charterer in disregard of Manning's claimed right of termination as set forth in its letter of August 15th, 1950, had sent the vessel to Germany with cargo and that she was to take a cargo of grain from U.S.N.H. to Italy. In addition, Manning notified a representative of the owners of the cargo, which the vessel was to load, that upon her expected arrival in the United States on or about January 8th, 1951, it would take possession. Thereupon the present proceeding was commenced, based upon a petition of Albatross, and an order to show cause containing a stay of action on the part of the respondent was granted on December 29th, 1950. The present motion was argued on January 5th, 1951, three days prior to the expected arrival date of the vessel. As of the writing of this opinion, no advice has been received as to whether or not in fact she has arrived.

Manning opposes the application in the main on the grounds that:

(1) The Arbitration Act of the United States, 9 U.S.C.A. § 1 et seq., does not contain any provision for the issuance of a stay where a suit or proceeding is not pending in a Court of the United States. As a corollary, it urges that the Court was without jurisdiction to grant the injunction contained in the order to show cause of December 29th, 1950, and is without jurisdiction to continue or grant a stay pending the arbitration.

(2) Assuming the Court had or has jurisdiction to issue a restraining order, Albatross is not entitled to such relief. Here the respondent's contention is that even if it should retake the vessel, Albatross' sole relief is a claim for money damages representing the difference between the charter rate under the contract of June 5th, 1950, and the market rate as of the date when the owner resumes possession.

(3) Finally, Manning contends that it has not committed any breach of its agreement to arbitrate and consequently there is no basis to compel arbitration under Section 4 or any other section of the Arbitration Act, and urges that on the contrary it is the petitioner who has not conformed to the requirements of the arbitration clause.

We consider the last contention first.

Although each of the parties has named its respective arbitrator, up to the present no action has been taken by them to name the third. The answering papers disclose the reason therefor.

The opposing affidavit of the Vice President of Manning Brothers, Inc. states on information and belief "that Mr. Fitzsimmons (Albatross' designee) is not a disinterested man to be appointed an arbitrator." The basis of this assertion is his employment by the Isbrandtsen Co., engaged in operating a vessel similar to the Yankee Fighter under a similar charter from a bareboat charterer; that a dispute involving the same clause as is in controversy in this proceeding has arisen between the owner and the Isbrandtsen Co., which has been submitted to arbitration. Manning contends because it is in the interests of the Isbrandtsen Co. to have the dispute decided so that its operation of the vessel would not be terminated under the so-called war clause, that consequently Fitzsimmons as an employee of Isbrandtsen "could not fairly be considered a disinterested person to act in a semi-judicial capacity in determining the question in dispute."

There has been submitted to the Court a statement by Fitzsimmons denying the claim so made upon information and belief, wherein he alleges, "I wish to unequivocally state that I consider myself a disinterested person qualified to act as arbitrator in the matter mentioned. Had I not done so, I would not have accepted the appointment" and further denying any financial interest of any kind in the Isbrandtsen Co.

It is to be noted that the dispute between the Isbrandtsen Co. and its charterer is in no respect directly related to the dispute between the parties hereto and the only suggested connection is that Clause 23 in the instant charter party is similar to the one which forms the basis of the Isbrandtsen arbitration.

It is interesting to note that the alleged lack of fairness or impartiality was made by respondent for the first time on December 29th, 1950, one day after it had notified the petitioner of its intention to seize possession of the vessel upon her arrival. The good faith of this contention is open to question.

 Certainly there are no facts before the Court on which a finding could properly be made that Fitzsimmons is disqualified from acting for lack of impartiality. Even assuming that sufficient facts were shown, the power of the Court to void his designation in advance of the hearing appears to be lacking. The respondent's remedy is set forth in Section 10 of the Arbitration Act. San Carlo Opera Co. v. Conley, D.C., 72 F.Supp. 825, Affirmed 2 Cir., 163 F.2d 310.

 The Court finds that the owner, although it did designate an arbitrator, has refused to proceed with the arbitration and by its asserted but unfounded claim of lack of impartiality of Fitzsimmons, has, in fact, prevented the arbitration from going forward. It is clear, therefore, that the instant proceeding is one within Section 4 of the Arbitration Act, and that Albatross is "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" and this aspect of the motion to compel Manning Brothers, Inc. to arbitrate the dispute is granted.

This proceeding was commenced by a petition. Instead of the five days notice in writing of the application referred to in said section, petitioner, by reason of the threatened acts of the respondent, applied for an order to show cause, which was granted on December 29th, 1950, returnable January 2nd, 1951. The order to show cause also contained a stay pending the decision thereon, enjoining the respondent from interfering with the operation of the vessel by the petitioner or the contracts entered into by it with shippers or consignees of cargo on or for said vessel.

We now consider the other contentions urged by the respondent.

One of these, in seeking the dissolution of the temporary injunction and also urged in opposition to the granting of a stay until the decision of the arbitrators shall have been rendered, is that the Arbitration Act "does not contain any provision for the issuance of a stay where a suit or proceeding is not pending in a Court of the United States."

While it is not clearly spelled out by the respondent in its opposing papers, its contention appears to be that under Section 3 "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement" the power of the Court is limited only to "stay the trial of the action until such arbitration has been had * * *." It is urged that the Court has no power to stay the threatened seizure by Manning. Accordingly, there is the question as to whether or not in view of the absence of any express power under the Act authorizing the Courts to grant stays (other than stays of actions or proceedings), such relief may be afforded in an arbitration proceeding.

■ The Court has not found and counsel have not submitted any case which directly passes upon the point at issue. There are, of course, the authorities which hold that enforcement of an arbitration provision is specific performance of the agreement and the exercise of the Court's equity power. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978; Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004.

Does the Court in directing compliance with the arbitration clause entered into by the parties exhaust its equity power to preserve the intended purpose of the arbitration?

■ I hold it does not and that when a proceeding to compel arbitration under the Act is properly commenced, as in this case, the Courts do possess power to grant stays incidental to a direction to a party specifically to perform his agreement.

■ The Supreme Court has held that the Act rendered arbitration provisions specifically enforceable and that Congress overturned the prior existing rule that performance of such agreements could not be compelled by a resort to Courts of equity or admiralty. The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117. The long history of the prior judicial hostility of the English and American Courts toward the concept of enforcing arbitration agreements has been set forth in Kulukundis Shipping Co. v. Amtorg Trading Corp., supra. The final acceptance by the Courts and the Congress of arbitration as a means of disposing of controversies should not be narrowly confined.

■ The Courts are not limited in their equity powers to the specific function of enforcing arbitration agreements but may exercise those powers required to preserve the status quo of the subject matter in controversy pending the enforcement of the arbitration provision. To rule otherwise would in effect permit a party to take the law into its own hands while the proceeding is carried on as a result of the specific direction of the Court.

The purpose of the Arbitration Act as set forth in the House Committees Report " * * * is simply to make the contracting party live up to his agreement * * *." It would be an oddity in the law if the Court, after compelling a party to live up to his undertaking to arbitrate, had to stand idly by during the pendency of the arbitration which it has just directed and permit him to assert his "right to breach a contract and to substitute payment of damages for non-performance."[1] The stay is an incident of the power to enforce the agreement to arbitrate. The language of the Court of Appeals, 2 Cir., although stated in a different context is appropriate here. It is "merely a stay order of a kind long familiar in common law, equity and admiralty actions." Kulukundis Shipping

1. Holmes, Collected Legal Papers (1920), 167, 175.

464

Co. v. Amtorg Trading Corp., supra, 126 F.2d at page 987.

■ Under the terms of the charter it was expressly provided that the "owner retains no control, possession or command whatsoever of said vessel during the period of the charter, but that the charterer shall have exclusive possession, control and command of said vessel during the period of the charter." (Clause 3) The proposed act of seizure would deprive the petitioner of its foregoing right to possession pending the arbitration, substantially change the status quo and negate the very purpose contemplated by the parties in submitting all disputed matters to arbitration.

There still remains the issue as to whether or not the facts in the case justify the exercise of the power. Again, on this issue, I hold that they do. It is clear that a genuine dispute exists between the parties. It was on August 17th, 1950, that Albatross rejected the Manning contention that a state of war existed within the meaning of the charter party. For three and one-half months Manning took no action and then came the successive steps with respect to the designation of its arbitrator, the purported disqualification of Fitzsimmons and the attempted seizure of the vessel.

The owner makes no claim of any conduct on the part of the charterer of a breach of the provisions of the charter party insofar as operation of the vessel or non-performance of any obligation is concerned. The sole basis of the owner's action in threatening to take possession is predicated upon its own interpretation of its alleged rights under the charter party.

The charterer, it appears, at the present time is under contract to carry a cargo to Italy for a third party after the vessel reaches the United States. In addition, it has heretofore transported cargo on its own and may well want to do that again. Albatross asserts that it, as well as the owner of the cargo destined for Italy, will suffer great damages by reason of the threatened seizure.

The proposed action, in addition to violating petitioner's right to possession under Clause 3, also deprives it of the right to exercise the option to extend possession and is also an interference with the contract between the charterer and the owner of the cargo.

Manning's claim is that if its actions are wrong, Albatross' remedy is at law and for money damages. Its position summed up in its own language is that "the utmost that petitioner could suffer if owner resumed possession of the vessel would be money damages. Such damages do not constitute irreparable injury and on general principles do not entitle a party to the issuance of an injunction." That may well be but the issue at this point is whether or not the Court has the power to preserve the status quo pending the hearing of the arbitration which the Court has directed under the Arbitration Act.

The issues between the parties might well have been resolved prior to this proceeding had the arbitrators met and functioned as intended by the agreement of the parties. Indeed, if they show a disposition to carry out their functions, the arbitration can be had and disposed of in a matter of days. Certainly the status quo should be preserved during the pendency of the arbitration.

The motion insofar as it seeks to restrain Manning Brothers, Inc. from taking any steps to take possession of the vessel SS Yankee Fighter, or to interfere with the operation of said vessel under said charter party or the performance thereof until the decision of the arbitrators shall have been rendered and notice thereof given to the parties thereto is granted.

Settle order on one day's notice.