**TURKISH STATE RAILWAYS ADMIN-ISTRATION, Plaintiff,**

v.

**VULCAN IRON WORKS, Defendant.**

**Civ. A. No. 4877.**

United States District Court
M. D. Pennsylvania.

June 8, 1955.

Cary McN. Euwer, of Cummings, Stanley, Truitt, Cross & Reeves, Washington, D. C., John McI. Smith, of Nauman, Smith, Shissler & Hall, Harrisburg, Pa., for plaintiff.

William T. Kirby, Chicago, Ill., Paul Bedford, Wilkes-Barre, Pa., Levien & Singer, New York City, for defendant.

JOHN W. MURPHY, Chief Judge.

By written agreement dated November 6, 1946, defendant agreed to manufacture, construct and deliver to the plaintiff at Wilkes-Barre, Pennsylvania, in this district, sixty-two locomotives at $115,000 each or $7,130,000. March 8, 1947, an additional contract was executed for twenty-six locomotives at $129,-000 each, or $3,354,000. All eighty-eight locomotives were delivered for a total price of $10,484,000.

In the original contract defendant promised to make deliveries in accordance with a specified schedule and, failing therein, to pay $57.50 for each day's delay per locomotive. In each contract defendant guaranteed engine parts— wheel sets (axles and wheels), tires and springs for three years; the rest of the material for one year.

In its complaint in Count One plaintiff avers that there were delays of 2027 locomotive days in making deliveries under the original contract, for which damages are claimed in the sum of $116,-552.50.

In Count Two as to the original contract and Count Three as to the second contract, plaintiff asserts that during the period in question difficulties arose as to each locomotive because of faulty material or defective manufacture and workmanship, and that despite notice and demand defendant failed and refused to remedy the defects or replace all defective parts, materials and accessories with new parts, materials and accessories at the earliest possible date as agreed in the contract. Plaintiff therefore claims damages in Count Two as to the sixty-two locomotives in the sum of $1,058,696.20, and in Count Three as to the twenty-six locomotives under the second contract an exactly similar sum, i. e., $1,058,696.20. The total claim for damages is stated to be $2,233,944.90.

It appears that as of October 27, 1952, the parties were in correspondence relative to a claim for delay in delivering the sixty-two locomotives under the original contract, and that defendant on November 3, 1952, indicated its willingness to arbitrate the issues involved. As of December 15, 1953, counsel for plaintiff indicated that they were attempting to obtain a statement of plaintiff's position which would afford a basis for negotiations between the parties on the several difficulties, and requested that counsel for defendant obtain a similar statement from their client. At that time counsel for plaintiff indicated that in order to protect the interests of their client and to prevent the statute of limitations from running, a complaint would be filed in the district court. Plaintiff's counsel indicated that although a complaint was to be filed it was not intended as any indication of plaintiff's unwillingness to settle the claim by arbitration or agree-

ment. Finally a complaint was filed in this court on January 7, 1954.

Under date of January 5, 1954, plaintiff's counsel in a letter to counsel for the defendant stated "We wish to inform you that the sum of $1,058,696.20 is the total amount claimed for Counts Two and Three. However, at the time the complaint was drawn we did not have in our possession sufficient information from Ankara to allocate the damage properly between the contract for the twenty-six locomotives and the contract for the sixty-two locomotives * * *."

Apparently on March 24, 1953, plaintiff's counsel wrote to the defendant stating that the plaintiff also desired to arbitrate in accordance with the agreement (at the same time as the delay claim) a further claim it had against the Vulcan Iron Works dealing with "faulty material or defective manufacture * * *."

By letter of March 31, 1953, defendant requested plaintiff to set forth the specific issues and/or claims which it believed were subject to arbitration under Article 21.

Plaintiff's counsel set forth the claim in more detail in its letter of April 9, 1953, to which defendant replied by indicating its intention to "review this phase of the matter at the next meeting of the Board of Directors scheduled for April 27, 1953".

August 14, 1953, plaintiff sought to bring to a head arbitration of the delay claim, at the same time forwarding "four copies of the necessary form of submission of the dispute under the auspices of the American Arbitration Association".

Under date of September 23, 1954, plaintiff wrote to defendant's counsel as follows: "Again, further demand is hereby made upon you to proceed with the arbitration of all of the above disputes in accordance with Article 21 of the contracts".

Article 21 reads as follows:

"In the event of differences arising between the Administration and the Contractor in the *elucidation or interpretation* of the present Contract, all *differences or disputes* arising between the Administration and the Contractor *regarding the terms* of the present Contract, each contracting side shall appoint an Arbitrator; and in case these Arbitrators do not come to an agreement, a third Arbitrator shall be appointed by the Arbitrators.

"If the selection is not agreed upon, the Chief Attorney of the United States of America shall be asked to make the appointment. If the latter refuses to do this, the Turkish Government and the Chief Justice of the United States shall agree upon the appointment of the person who is to appoint the third Arbitrator. The decision of two (2) of the three (3) Arbitrators shall be final and binding on both parties. The contracting parties shall *promptly* put this decision into execution." (Italics supplied).

█ Plaintiff's claim for damages for delay in making deliveries and because of faulty material or defective manufacture does not arise from any differences between the parties as to "the elucidation or interpretation of the * * * Contract"; nor does it appear that they constitute "differences or disputes * * * regarding the terms of the * * * contract." The questions appear to be whether there were delays for which the defendant was responsible and for which damages should be paid, and again whether there were defects in the material or defective manufacture or workmanship within the guarantee period for which defendant was responsible and for which plaintiff should be reimbursed.

Each contract provided that merely because faulty material had previously been inspected, its construction supervised, and drawings duly certified, such circumstances would not exempt the contractor from his responsibilities; in fact, the contractor specifically promised not to raise objections based upon previous tests.

Each contract provided in Article 9, paragraph 8, "To guarantee the fulfillment of the disposition of this Article, the Contractor agrees to have the Administration withhold notes covering the last three \* \* \* payments of the Contractor's participation until the period of guarantee expires."

Article 20, "In \* \* \* case of Contractor's failure in the fulfillment of his undertakings, the Administration reserves the right to cancel the \* \* \* Contract without having recourse to any legal actions, and to demand to put Article 15 \* \* \* into effect, thus raising claims of indemnities."

Article 15 provided, "In \* \* \* case of cancellation of the \* \* \* Contract, due to the Contractor's failure in fulfilling his undertakings \* \* \* the Contractor agrees \* \* \* to refund \* \* \* immediately and without any claims whatsoever, payments already effected for locomotives not yet shipped, together with interest \* \* \*."

Apparently the contract was not cancelled and the sanctions of Article 15 were not applied. Absent any effective steps to proceed under this article, plaintiff resorted to the United States district court for the enforcement of its claims. Some months after filing its original complaint and while a motion by the defendant for a more definite statement was pending, plaintiff amended its complaint praying that the matter be referred to arbitration.

In view of our understanding of Article 21, we put to one side the question of laches, of waiver, and election of remedies. See La Nacional Platanera etc. v. North American Fruit & Steamship Corp., 5 Cir., 1936, 84 F.2d 881, at page 882; American Sugar Refining Co. v. The Anaconda, 5 Cir., 1943, 138 F.2d 765, at page 766, affirmed 322 U.S. 42, at page 44, 64 S.Ct. 863, 88 L.Ed. 1117; see notes 117 A.L.R. 301, at page 314; 161 A.L.R. 1426, at page 1433; Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 7 Cir., 1942, 128 F.2d 411, at page 413. The question of whether or not an answer has been filed would be pertinent only in determining whether or not the defendant was equally bound by the doctrine of waiver. Here the defendant has indicated its desire to have the entire matter litigated in these proceedings. Radiator Specialty Co. v. Cannon Mills, Inc., 4 Cir., 1938, 97 F.2d 318, at page 319, 117 A.L.R. 299; Kulukundis Shipping Co., S. A. v. Amtorg Trading Corp., 2 Cir., 1942, 126 F.2d 978, at pages 988, 989; American Locomotive Co. v. Gyro Process Co., 6 Cir., 1950, 185 F.2d 316, at page 318; cf. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 1935, 293 U.S. 449, at page 453, 65 S.Ct. 313, 75 L.Ed. 583.

Likewise as to the question of a stay of proceedings which plaintiff did not in fact request in its amended complaint but in a later motion. Although this is a diversity proceeding, see and cf. 9 U.S.C.A. § 3 and 4.

■ As to defendant's motion for a more definite statement under 28 U.S. C.A., Fed.Rules Civ.Proc. Rule 12(e), see and cf. Id. Rule 8(a), (e) (1) and (f). As we held in Metropolis Bending Co. v. Brandwen, D.C., 8 F.R.D. 296, at page 297, "To the pleadings is assigned the task of general notice giving, whereas narrowing and clarifying the basic issues between the parties, ascertaining the facts or information as to the existence or whereabouts of facts relative to those issues is the role of the deposition-discovery process aided by the pre-trial hearing. Hickman v. Taylor, 329 U.S. 495, 500, 67 S.Ct. 385, 91 L.Ed. 451. Evidence need not be plead. All that is required is a short and plain statement of the claim showing that the pleader is entitled to relief; each averment to be simple, concise and direct; technicality is not required. Sierocinski v. E. I. Du Pont De Nemours & Co., 3 Cir., 1939, 103 F.2d 843."

We understand from statements made at the time of argument that the defendant's counsel is in a position to make answer to the allegations of Count One of the complaint. As to Counts Two and Three, defendant objects to the present form of the complaint in that it has been subjected to an overall claim of $2,-

233,944.90. Plaintiff's counsel having stated that at the time the complaint was drawn he was not in possession of sufficient facts to state whether or not the claim for $1,058,696.20 was attributable entirely to one of the contracts or to be divided between them, by this time surely he is in possession of such information and able to aver it.

In view of the foregoing, an order will be filed this date denying plaintiff's motion for a stay of proceedings in this court, as well as denial of the motion to submit the matter to arbitration. Plaintiff will be directed to file an amended complaint properly apportioning its claim between Counts Two and Three. While the plaintiff is not required to plead any specificity of detail, it does not seem unreasonable to expect that at this date plaintiff should be able to plead at least in general terms the amount and extent of the damage which it asserts it is entitled to in view of the asserted violations by the defendant of the guarantee contained in each of the respective contracts.