251 F.2d 455
 STANDARD MAGNESIUM CORPORATION, whose principal office is at
Tulsa, Oklahoma, Appellant,
v.
Otto FUCHS, K. G. Metallwerke, whose principal office is at
Meinerzhagen(Westfalen) Germany, Appellee.
 No. 5654.
 United States Court of Appeals Tenth Circuit.
 Dec. 16, 1957.
 
 Harry M. Crowe, Jr., Tulsa, Okl., for appellant.
 Louis May, Oklahoma City, Oil., for appellee.
 Before PHILLIPS, MURRAH and BREITENSTEIN, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 By written contract entered into in 1954, Standard Magnesium Corporation,[1] a Kansas corporation, sold to Otto Fuchs,[2] K.G., Metallwerke, whose principal office is at Meinerzhagen (Westfalen), Germany, approximately 100 metric tons of raw magnesium.
 
 
 2
 The contract contained the following provision:
 
 
 3
 '* * * all disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the rules.'
 
 
 4
 The Rules of Conciliation and Arbitration of the International Chamber of Commerce in part provide:
 
 
 5
 '1. When the parties have already agreed to submit their case to arbitration under these Rules, the defendant shall be bound to submit to arbitration.
 
 
 6
 '2. Should the defendant refuse or fail to submit to arbitration, the Court of Arbitration shall order that the arbitration be proceeded with, such refusal or absence notwithstanding.
 
 
 7
 '1. A form of submission shall be sent to the parties for their signature.
 
 
 8
 '2. If any party having previously agreed to refer a matter to arbitration of the International Chamber refuses or neglects to sign the form of submission, the Court of Arbitration may order that arbitration proceed notwithstanding.'
 
 
 9
 After receiving the goods, a dispute arose as to whether they conformed to the contract and Fuchs invoked the arbitration clause of the contract. The International Chamber of Commerce, in accordance with its rules, prepared and submitted to the parties a 'Form of Submission.' It was signed by Fuchs, but Standard refused to sign it and refused to arbitrate.
 
 
 10
 The Court of Arbitration, on December 15, 1954, appointed an arbitrator, designated Oslo, Norway, as the place of arbitration and directed that the arbitration proceed. The arbitration proceeded ex parte and the arbitrator made an award of $12,371.28.
 
 
 11
 Since the contract of sale evidenced a transaction involving foreign commerce, the agreement to arbitrate is covered by the United States Arbitration Act,[3] 61 Stat. 669, 9 U.S.C.A. 1 to 14, inclusive.
 
 
 12
 Section 2 of the Act reads in part as follows:
 
 
 13
 'A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'
 
 Section 4 of the Act in part provides:
 
 14
 'A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * *'
 
 
 15
 Section 4 prescribes the procedure to be followed in a proceeding for an enforcement order and further provides that if there is a finding 'that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.'
 
 
 16
 Following the award, Fuchs brought a common law action in the court below, seeking a judgment upon the award. In that action Standard asserted, among other defenses, that when it refused to arbitrate, an order under 4 of the Act directing the parties to proceed with the arbitration in accordance with the terms of the agreement was a prerequisite to the power of the arbitrator to proceed with the arbitration and make a valid award. The trial court concluded that such defense was not well taken, on authority of Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 47 A.L.R.2d 1331, certiorari denied 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392, and gave judgment on the award for $12,371.28, with interest at six per cent from October 21, 1955, for $600, the costs of arbitration, and for costs in the instant action. Standard has appealed.
 
 
 17
 The sole question here presented is whether an order that the arbitration proceed, made under 4 of the Act, was a prerequisite to a valid award.
 
 
 18
 At common law executory agreements to arbitrate were revocable at will by either party.[4] Under the common law an agreement to arbitrate did not oust the courts of jurisdiction. While damages were recoverable for a wrongful breach of a contract to arbitrate, unwilling arbitrations were not favored and a party might withdraw from the arbitration at any time prior to the award.[5] A provision in an agreement to arbitrate that the arbitration may proceed ex parte if either party neglects or refuses to appear did not make the agreement irrevocable at common law.[6]
 
 
 19
 The existing law, prior to its change by legislative enactments was well summarized in Petition of Pahlberg D.C.S.D.N.Y., 43 F.Supp. 761, 762, as follows:
 
 
 20
 'Prior to 1925 there was no federal legislation on the subject of arbitration and it is an historical fact that our courts, generally speaking, had not looked with favor upon arbitration agreements. They had naver denied that an agreement to arbitrate created a right but public policy was thought to forbid specific performance.'[7]
 
 
 21
 Standard contends that the Act is wholly remedial and does not alter substantive rights.
 
 
 22
 We think it clear, however, that Congress intended by 2 of the Act to abrogate the common law rule that agreements to arbitrate are revocable by either party at any time before an award has been made and to place arbitration agreements on the same footing as other contracts.
 
 
 23
 The House Report on H.R. 646, 68th Congress, 1st Session in part reads:
 
 
 24
 'Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him. An arbitration agreement is placed upon the same footing as other contracts, where it belongs.'
 
 
 25
 We conclude that the effect given to provisions in contracts of arbitration by 2 of the Act beings into being substantive rights and that such section is not purely remedial.
 
 
 26
 Section 4 of the Act provides a remedy by summary proceedings in the nature of specific performance where a court order is necessary in order for the arbitration to proceed. It does not follow, however, that 4 must be resorted to in every case where one party refuses to proceed with the arbitration. It is permissive by its terms. If the agreement provides that where one party refuses or fails to submit to arbitration, that an arbitrator may be appointed and that the arbitration may proceed ex parte, and further provides for the procedure to be followed in such an ex parte proceeding, there is no occasion to invoke the remedy of 4. Such a remedy is necessary only in those cases where one party refuses to participate in the arbitration and a court order is necessary in order for the arbitration to proceed ex parte. An example is where the arbitration agreement provides that each party shall select an arbitrator and there is no provision in the agreement, where one party refuses to appoint an arbitrator, for the selection of such arbitrator. Moreover, 4 only applies in those cases where one party is aggrieved by the failure, neglect or refusal of the other party to proceed with the arbitration. It is only where the arbitration may not proceed under the provisions of the contract without a court order that the other party is really aggrieved. This construction, we think, is in keeping with the spirit and purpose of the Act to make arbitration agreements irrevocable and to give the same effect to their provisions as are given to the provisions of contracts generally.
 
 
 27
 The construction we have given to 4 of the Act is fully supported by the following adjudicated cases: Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 47 A.L.R.2d 1331, certiorari denied 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392; Kanmak Mills v. Society Brand Hat Co., 8 Cir., 236 F.2d 240; International Brotherhood of Teamsters v. Shapiro, 138 Conn. 57, 82 A.2d 345. See also: The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 and Knutson v. Lasher, 219 Minn. 594, 18 N.W.2d 688, 693. See contra: Bullard v. Morgan H. Grace Co., 240 N.Y. 388, 148 N.E. 559 and Stein v. Drake, 116 Cal.App.2d 779, 254 P.2d 613. Such construction does not deny the other party an adequate remedy. In the proceeding to enforce the award he may assert that the contract of arbitration was revocable upon grounds existing at law or in equity for the revocation of any other contract, or that the arbitration was invalid because of vitiating infirmities. In short, he may assert in such proceedings any defense which he could have asserted in a proceeding under 4 and any other valid defense to the award.
 
 
 28
 The judgment is affirmed.
 
 
 
 [1]
 Hereinafter called Standard
 
 
 [2]
 Hereinafter called Fuchs
 
 
 [3]
 Hereinafter called the Act
 
 
 [4]
 Delaware & Hudson R. Corporation v. Williams, 7 Cir., 129 F.2d 11, 14; 6 C.J.S. Arbitration and Award 33, p. 173; 3 Am.Jur., Arbitration and Award, 59, p. 891; Cf. Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 120-122, 44 S.Ct. 274, 68 L.Ed. 582
 
 
 [5]
 Tejas Development Co. v. McGough Bros., 5 Cir., 165 F.2d 276, 279-280; 6 C.J.S. Arbitration and Award 33, p. 173; 3 Am.Jur., Arbitration and Award, 59, p. 891
 
 
 [6]
 Boston & L.R. Corp. v. Nashua & L.R. Copr., 139 Mass. 463, 31 N.E. 751, 752; and see annotation in 47 L.R.A., N.S., 402, 403
 
 
 [7]
 See The Atlanten, 252 U.S. 313, 315, 40 S.Ct. 332, 64 L.Ed. 586; Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 123, 44 S.Ct. 274, 68 L.Ed. 582