**PENGUIN MARITIME LTD., Plaintiff,**

v.

**LEE & MUIRHEAD LTD., a/k/a Lee & Muirhead Pvt. Ltd., Defendant.**

No. 08 Civ. 6570 (JSR).

United States District Court,
S.D. New York.

Dec. 4, 2008.

Michael E. Unger, Freehill, Hogan & Mahar, LLP, New York, NY, for Plaintiff.

Rahul Wanchoo, Law Offices of Rahul Wanchoo, New York, NY, for Defendant.

## MEMORANDUM

JED S. RAKOFF, District Judge.

On July 24, 2008, plaintiff Penguin Maritime ("Penguin") filed a complaint with

this Court asserting claims for maritime tort and breach of maritime contract against defendant Lee & Muirhead Ltd. ("L & M"). On August 11, 2008, the Court issued an order of maritime attachment and garnishment restraining defendant's property in accordance with Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure. L & M subsequently moved to vacate the maritime attachment order and dismiss the complaint on the alternative grounds that the Court lacked subject matter jurisdiction over the claim or that plaintiff had failed to make the requisite showing to establish that the attachment should not be vacated. L & M also moved for damages caused by Penguin's alleged bad faith in filing its complaint against L & M and/or by Penguin's wrongful attachment and abuse of process. Following briefing, oral argument before the Court was held on November 6, 2008. By Order dated November 6, 2008, the Court denied defendant's motion in its entirety. This Memorandum states the reasons for that ruling.

According to the Complaint, Penguin, in 1996, entered into a charter party with Inglewood Gestion S.A. ("Inglewood") under which Penguin chartered the M/V Lissom (the "Lissom") to carry 7,000 metric tons of bagged rice from Haldia, India to West Africa. Compl. ¶ 4. The charter designated L & M as Penguin's agent in the port of Haldia. *Id.* ¶ 5. Over the next several weeks, there was a series of delays in berthing and then loading the ship, initially because the cargo was not ready to be loaded and ultimately because the cargo was found to be infested with insects and "unfit for human consumption." *Id.* ¶¶ 10, 12, 16. In the end, the cargo had to be discharged from the Lissom. *Id.* ¶ 18. Penguin claims that L & M breached its duty as agent in several ways, including failing to appoint surveyors to inspect the cargo, *id.* ¶ 13, improperly representing to

port authorities that clean mate's receipts for the cargo would be issued, *id.* ¶ 8, and improperly putting pressure on the vessel's Master to issue clean mate's receipts for the cargo even after the poor condition of the rice had been discovered, *id.* ¶ 17. Penguin has a suit pending against L & M before the High Court of Judicature at Bombay that also arises from these events.

L & M argues that its agency agreement with Penguin was for shoreside functions only and so this case is not within the Court's admiralty jurisdiction. Under 28 U.S.C. § 1333(1), federal district courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." At one time, under the rule of *Minturn v. Maynard*, 17 How. 477, 15 L.Ed. 235 (U.S. 1855), disputes over agency contracts were *per se* excluded from admiralty jurisdiction. However, in *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991), the Supreme Court expressly overruled *Minturn* and held that in determining whether jurisdiction exists in such cases, "lower courts should look to the subject matter of the agency contract and determine whether the services performed under the contract are maritime in nature." *Id.* at 612, 111 S.Ct. 2071. In so doing, the lower court must bear in mind that "the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce." *Id.* at 608, 111 S.Ct. 2071. Since deciding *Exxon*, the Supreme Court has further explained that in determining the boundaries of admiralty over contracts a "conceptual rather than spatial" approach is appropriate. *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004).

In this case, the nature and scope of the agency relationship between Penguin and L & M were apparently never specified in

a writing. There does not, however, appear to be any fundamental disagreement between the parties as to what L & M's duties were. According to a declaration submitted by defendant, L & M was obligated, among other things, to: arrange for the berthing of the vessel; arrange for shore passes for crew members; arrange for a supply of fresh water to the vessel; arrange for payment of port charges; and arrange for loading and proper documentation of the cargo. Declaration of Dinesh Dutia in Support of Defendant's Motion to Vacate Maritime Attachment ¶ 2.

█ Defendant argues that these services were merely preliminary to any maritime commerce and therefore were not themselves maritime in nature. It is true that contracts that are preliminary to, as opposed to part of, maritime contracts are considered too remote from maritime commerce for admiralty jurisdiction to exist. In *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 133–34 (2d Cir. 1998), the Second Circuit held that a contract under which plaintiff was to act as a broker and procure a subcharter for defendant was not a maritime contract but was preliminary to maritime commerce. Similarly, in *Maritima Petroleo E Engenharia LTDA. v. Ocean Rig 1 AS*, 78 F.Supp.2d 162, 169 (S.D.N.Y.1999), the district court found that an agreement to procure a contract for the future use of defendants' offshore drilling rigs was not maritime in nature.[1] Here, however, L & M did not act as an agent procuring some further contract that was maritime in nature; rather, it was engaged to itself perform tasks that are directly related to maritime

commerce: for example, arranging for berthing of the vessel and loading cargo. Indeed, in *Exxon*, the Supreme Court found that an arrangement to supply fuel to a ship is maritime in nature. 500 U.S. at 612, 111 S.Ct. 2071. Among L & M's duties, similarly, was supplying fresh water to the Lissom. These facts compel the conclusion that the agency agreement between Penguin and L & M was maritime in nature and that admiralty jurisdiction therefore exists in this case.

█ Whenever property is attached pursuant to an order of maritime attachment, any person claiming an interest in it is entitled to a prompt hearing to determine whether the attachment should be vacated. Fed. R. Civ. P. Supp. Rule E(4)(f). At this hearing, the plaintiff must show that "1) it has a valid *prima facie* admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir.2006). The court, in turn, may exercise its equitable discretion to vacate the attachment if the defendant shows that it is subject to suit in a convenient adjacent jurisdiction, that the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located, or that the plaintiff already has sufficient security for any potential judgment. *Id.*

The majority of courts in the Southern District of New York have held that in

---

1. The Court notes that two of the cases that defendant cites in support of its position that agency agreements are not within admiralty jurisdiction predate the Supreme Court's overruling of *Minturn* and so are no longer good law to the extent that they rely on that case: *Christman v. Maristella Compania Navi-* *era*, 293 F.Supp. 442 (S.D.N.Y.1968) and *Boyd, Weir & Sewell, Inc. v. Fritzen–Halcyon Lijn, Inc.*, 709 F.Supp. 77 (S.D.N.Y.1989) (relying on *Peralta Shipping Corp. v. Smith & Johnson*, 739 F.2d 798 (2d Cir.1984), which in turn expressly relies upon *Minturn* ).

assessing whether plaintiff has made out "a *prima facie* admiralty claim" as *Aqua Stoli* requires, courts should apply a *prima facie* standard rather than the more demanding "reasonable grounds" or "fairly probable" standard. *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 266–67 (S.D.N.Y.2007); *Padre Shipping, Inc. v. Yong He Shipping*, 553 F.Supp.2d 328, 331–32 (S.D.N.Y.2008). Most courts in this district accordingly do not require that the plaintiff present evidence in support of its claim but rather look to see whether the plaintiff's complaint sets forth facts with sufficient particularity to meet the heightened pleading standard of Supplemental Admiralty Rule E(2)(a). *Padre Shipping*, 553 F.Supp.2d at 332. Some courts will, however, focus instead on the evidence submitted with the parties' papers or at the post-attachment hearing. *See, e.g., Wajilam Exps. (Singapore) Pte., Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 279 and n. 5 (S.D.N.Y.2006) (stating that the Second Circuit has not ruled that the *prima facie* standard precludes a "reasonable grounds" inquiry that includes an examination of other evidence submitted by the parties but noting that while the court may review such evidence, "plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case").

Here, regardless of whether the Court looks only at plaintiff's complaint or examines the further submissions of the parties, plaintiff's claim survives the motion to vacate the attachment and dismiss the complaint. Nothing defendant has submitted shows that plaintiff cannot make out a claim. The gravamen of Penguin's breach of maritime contract and maritime tort claims is that L & M failed to fulfill its duties as agent by inadequately overseeing the process of loading the cargo and inappropriately handling the matter of issuing mate's receipts for the cargo. L & M have focused, in their motion papers and at oral argument, *see* transcript, November 6, 2008, on Penguin's specific claim that L & M represented to port authorities, without authorization from Penguin, that the vessel would issue "clean" mate's receipts for the cargo. Compl. ¶ 8. L & M argues that this statement was no more than an assurance that it would comply with the rules of the port. But even accepting L & M's construction of this statement—which the Court is not required to do in deciding this motion—it is not true that plaintiff's claim must stand or fall on its significance. Plaintiff also alleges that L & M failed to have the cargo prepared for loading in a timely manner, *id.* ¶ 10, failed to have the cargo properly inspected, *id.* ¶ 13, and improperly put pressure on the vessel's Master to issue clean mate's receipts despite the obviously unsuitable condition of the cargo, *id.* ¶ 17. Moreover, evidence has been submitted which suggests that even after the cargo had been inspected and declared "unfit for human consumption," *see* Ex. F to Declaration of Alexandra Tsamadou in Opposition to Defendant's Motion to Vacate Attachment and Dismiss Complaint ("Tsamadou Decl."), L & M was engaged in communication with the Lissom's Master and its managers attempting to persuade the Master to issue clean mate's receipts for the cargo, *see* Exs. A and G to Tsamadou Decl.

█ L & M further argues that Penguin's claims fail because they are invalid under Indian law, which both parties appear to agree applies to this dispute. Plaintiff, however, has submitted a declaration by a practitioner of Indian law stating that under that law, plaintiff has a *prima facie* valid maritime claim. Declaration of Ashwin Shanker in Opposition to Defendant's Motion to Vacate Attachment and Dismiss Complaint ¶¶ 40–50. *See Padre Shipping*, 553 F.Supp.2d at 333 (finding that plaintiff had made out a valid

prima facie admiralty claim when it had shown that Chinese law would govern the contract and that it had a valid claim under that law). The competing declarations to the contrary offered by defendant, *see, e.g.,* Reply Declaration of Ruzbeh J.S. Mistry in Support of Defendant's Motion to Vacate Maritime Attachment, while they might ultimately be relevant to a determination of this issue, do not render plaintiff's showing inadequate at this stage. Plaintiff has made out a *prima facie* claim, and defendant's motion to vacate the attachment and dismiss the claim was accordingly denied. In light of these conclusions, defendant's claim for damages for wrongful attachment and abuse of process was also denied.