**BELUGA CHARTERING GMBH, Plaintiff,**

v.

**KOREA LOGISTICS SYSTEMS INC., Defendant.**

**No. 08 Civ. 4896.**

United States District Court, S.D. New York.

Dec. 4, 2008.

Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, by Jason Waguespack, Esq., Condon & Forsyth LLP, New York, NY, by Lili F. Beneda, Esq., for Plaintiff.

Rodriguez O'Donnell, Gonzalez & Williams, P.C., Washington, DC, by Henry P. Gonzalez, Esq., for Defendant.

SWEET, District Judge.

Defendant Korea Logistics Systems Inc. ("KLS" or the "Defendant") has moved by letter motion pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rules") to vacate the attachments obtained by the plaintiff Beluga Chartering GMBH ("Beluga" or the "Plaintiff") and, under Rule E(7) of the Supplemental Rules, for countersecurity on its counterclaims. Upon the facts and conclusions set forth below, the motion of KLS to vacate the attachments and for countersecurity is denied.

## I. PRIOR PROCEEDINGS

On May 28, 2008, Beluga filed a Verified Complaint under Rule B against KLS for damages sustained due to KLS' breach of charter and seeking security under Rule B. An Ex Parte Order for Process of Maritime Attachment was issued by this Court on that same date ordering any garnishees within the Southern District of New York holding tangible or intangible property of KLS to restrain such property up to an amount including $1,101,615.20.

On June 26, 2008, Beluga received notification from Deutsche Bank advising that funds for KLS in the amount of $136,297.13 had been restrained pursuant to the Process of Maritime Attachment & Garnishment issued by this Court. On June 27, 2008, Beluga received notification advising that additional funds of KLS had been attached in the amount of $297,801.37. Again on June 30, 2008, KLS' funds in the amount of $79,980.00 were restrained by Standard Chartered Bank. The amount of funds restrained to date total $514,078.50.

Subsequently, Beluga notified KLS of the attachments and KLS filed a motion to vacate the attachments and for countersecurity which was marked fully submitted on August 6, 2008.

## II. FACTS

The underlying dispute is based upon a charter party between Beluga as an operator of a vessel and KLS as a charterer of the vessel. Pursuant to the charter party, in November 2007, Beluga transported KLS' shipment from Map Taphud, Thailand, and Masan, Korea, to Point Lisas, Trinidad and Tobago. During the voyage from Map Taphud to Masan, the vessel experienced numerous "gross waves" as well as high seas and storm force winds. Compl. ¶ 11. Beluga has alleged damages, including vessel damage, demurrage, port of refuge expenses, deviation and bunker expenses arising out of the alleged failure of KLS to properly load and stow the cargo. *Id.* ¶ 15.

## III. THE MOTION TO VACATE THE ATTACHMENTS IS DENIED

### A. *Applicable Standard*

 In a Rule E(4)(f) inquiry challenging a Rule B attachment, in addition to demonstrating that it has met the filing and service requirements, a plaintiff has the burden to show that (1) it has a prima facie admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached defendant's property was within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir.2006).

On this motion KLS seeks to vacate the attachments on the grounds that (1) Beluga does not have a prima facie admiralty claim, (2) defendant KLS can be found in this District, and (3) the ongoing London arbitration precludes the attachments.

### B. *Beluga Has a Prima Facie Admiralty Claim*

 "Following *Aqua Stoli*, the majority of courts in this district have held that the standard for determining whether a plaintiff has asserted a 'prima facie admiralty claim' is the 'prima facie standard,' rather than the more demanding 'fair probability' or 'reasonable grounds' standards." *Padre Shipping, Inc. v. Yong He Shipping*, 553 F.Supp.2d 328, 331–32 (S.D.N.Y.2008). To constitute a valid admiralty claim under the "prima facie standard," the claim must fall within the admiralty jurisdiction of the federal courts. *See Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 266 (S.D.N.Y. 2007). There is some disagreement within this District as to whether the question of the claim's further "validity" is governed by federal law, see *Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*, 08 Civ. 5435(BSJ), 2008 WL 4905460, at *2–3 (S.D.N.Y. Aug. 7, 2008) (expressing the view that federal law should govern, but noting that plaintiffs had failed to meet their burden under U.S. or English law), or the substantive law that will govern the underlying action. *See Sonito Shipping Co., Ltd. v. Sun United Mar. Ltd.*, 478 F.Supp.2d 532, (S.D.N.Y.2007) ("The existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law. . . ."). In either case, the plaintiff need not present evidence to support his claim, but the complaint must contain factual allegations to meet the heightened pleading standard of Supplemental Rule E(2)(a), which requires that the complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *Padre Shipping*, 553 F.Supp.2d at 332.

 Beluga must first show that it has "an in personam claim against the defendant which is cognizable in admiralty. . . . In other words, the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333." *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir.2002) (alteration in original) (quoting Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 J. of Mar. L. and Comm., No. 4, at 526 & n.20 (Oct. 1989)). A contract dispute arising from a "maritime contract" falls within the federal courts' admiralty jurisdiction. *CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 379 (2d Cir. 1982). Beluga has alleged damages in this case arising from KLS' actions or inactions that resulted in a breach of the charter party. *See* Compl. ¶¶ 5–16. "Traditional texts have defined a 'maritime' contract as one that, for example, relat[es] to a ship in

its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment...." *Stolt–Nielsen SA v. Celanese AG*, 430 F.3d 567, 572 (2d Cir.2005) (quoting *CTI–Container Leasing Corp.*, 682 F.2d at 379 (alteration in original, quotation omitted)). A charter party, such as that which is sued on here, falls squarely within the definition of a maritime contract. *See Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir.1991) ("It is well-established that a charter party agreement is a maritime contract.").

As regards the validity of Beluga's claim, it is unnecessary to resolve the question of whether the underlying substantive law or federal law governs, as KLS has failed to demonstrate any legal infirmity in Beluga's claim under either English or federal admiralty law. KLS' argument that Beluga has failed to state a prima facie case relies on factual assertions that any damage to the vessel resulted from Beluga's own negligence or an act of God. *See* Letter Motion 2. Such factual contentions do not bear on the prima facie validity of Beluga's claim. *See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 279 (S.D.N.Y.2006) ("[I]t would defeat the purpose of attachment-preserving defendants' assets in case plaintiff is able to prevail at trial or on summary judgment-to require at this stage that plaintiffs asserting a 'valid prima facie maritime claim' prove that the facts in the complaint are true."). Beluga has demonstrated that it maintains a prima facie admiralty claim against KLS.

## C. *KLS Cannot be Found in the District*

"The Admiralty Rules do not define the expression ' found within the district.' " *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir.1963). The Second Circuit has held that the Rule requires "a two-pronged inquiry: First, whether [the defendant] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Id.*; *see also Marimed Shipping Inc. v. Persian Gulf Shipping Co., Inc.*, 567 F.Supp.2d 524, 526 (S.D.N.Y.2008). "Under this framework, a maritime attachment will be vacated if the defendant has sufficient contacts with the district so that it is found in the district in the jurisdictional sense and has an agent in the district upon whom service of process could be delivered." *Stolt Tankers B.V. v. Geonet Ethanol, LLC*, 08 Civ. 4382(SAS), 2008 WL 4829944, at *2 (S.D.N.Y. Nov. 6, 2008).

To demonstrate that it is found within this District, KLS points to its tariff and bond filed with the Federal Maritime Commission ("FMC"), its registration as a non-vessel operating common carrier ("NVOCC"), and its designation of Smart Cargo Service as an agent for the purpose of complying with FMC regulations. KLS does not, however, contend that it is registered to do business in the State of New York, or that it actually conducts or conducted business in this District at the time of attachment sufficient to subject it to the jurisdiction of this Court. KLS alleges that its "website shows that it has an office in New York," which "provides exactly the same address and contact information for KLS' designated agent for service of process." *See* Letter Motion 3. KLS also submits, by declaration, that "has maintained an office in New York since July 2001, through an agent and affiliated company, K.L.S. America, Inc." and that it "transacts and conducts business in New York through International Express Shipping Co., Ltd. with the same address as K.L.S. America, Inc., an active New York corporation." Decl. of N.S. Cho in Support of Def.'s Mot. to Vacate Ex Parte Attachment Order ("Cho Decl.") ¶¶ 2–3. Although Smart Cargo Service and K.L.S.

America Inc. are companies listed with New York's Secretary of State operating at 145–11 155th St., Jamaica, New York 11434, these companies are separate and apart from KLS. According to Beluga, KLS itself maintains no presence in this District and is not registered to do business within the State of New York. .

As such, even if KLS has properly designated a legal agent in Jamaica, New York, it has not shown that it can be found within the Southern District of New York because it has not alleged that it has "engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process." *Seawind,* 320 F.2d at 582.

### D. *The Pending London Arbitration Does Not Preclude the Attachments*

██ KLS also argues that the attachments are improper because Beluga is pursuing arbitration of its claim in London. London arbitration was agreed to in the charter, and Beluga agrees that it has initiated arbitration there. However, it is well established that this Court has the power to order provisional relief pending a foreign arbitration. *Compania De Navegacion Y Financiera Bosnia S.A. v. Nat'l Unity Marine Salvage Corp.,* 457 F.Supp. 1013, 1014 (S.D.N.Y.1978). KLS has cited no authority to the contrary.

The arbitration clause at issue in this case places the dispute within the bounds of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 3 U.S.T. 2517, T.I.A.S. No. 6997, as implemented by section 201–08 of the Federal Arbitration Act, 9 U.S.C. §§ 201–08. Although the Convention does not explicitly authorize attachment in admiralty cases, "courts have consistently held that in admiralty cases under the Convention, a par-

ty can obtain a writ of attachment." *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.,* 155 F.Supp.2d 1174, 1180 (C.D.Cal.2001). *See E.A.S.T. Inc. of Stamford, Connecticut v. M/V Alaia,* 876 F.2d 1168, 1173 (5th Cir.1989); *Atlas Chartering Servs. v. World Trade Group,* 453 F.Supp. 861, 863 (S.D.N.Y.1978); *Andros Compania Maritima, ·S.A. v. Andre & Cie, S.A.,* 430 F.Supp. 88, 91–92 (S.D.N.Y. 1977); ·*see also The Anaconda v. Am. Sugar Refining Co.,* 322 U.S. 42, 46, 64 S.Ct. 863, 88 L.Ed. 1117 (1944) (noting that, by enactment of Section 8 of the Federal Arbitration Act, "Congress plainly and emphatically declared that although the parties had agreed to arbitrate, the traditional admiralty procedure with its concomitant security should be available to the aggrieved party without in any way lessening his obligation to arbitrate his grievance rather than litigate the merits in court").

### IV. KLS' REQUEST FOR SECURITY ON ITS COUNTERCLAIM IS DE-NIED·

On August 13, 2008, KLS filed a counterclaim for indemnity from Beluga on a claim by Samsung Engineering Co, Ltd. ("Samsung") for damage to the cargo that is the subject of this action, in the amount of $3,185,000. Def.'s Ans. and Affirmative Defenses to Verified Compl., and Counterclaim ¶¶ 41–62. In its reply brief, KLS requests that the Court require Beluga to provide security on this counterclaim. *See* Reply 8–9.

Rule E(7)(a) states, in relevant part:

When a person has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the

court for cause shown, directs otherwise . . . .

"Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions." *Result Shipping Co. v. Ferruzzi Trading*, 56 F.3d 394, 399 (2d Cir.1995) (citations omitted). "In exercising this discretion, the court should be guided primarily by two principles": (1) countersecurity is intended "to place the parties on an equality as regards security," and (2) countersecurity is not intended "to impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Id.* at 399–400 (quotation omitted).

KLS' request for counter-security relies on its allegation that it has "received a claim for damages" from Samsung. Answer SI 53. KLS has also submitted a letter from Samsung's CEO requesting compensation Samsung's damages and asserting: "[i]f no appropriate actions are taken, we shall deal with this case using all available means and methods." Cho Decl. Ex. 9.

■ "In general, courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests for attachments." *Sonito*, 478 F.Supp.2d at 540. KLS does not assert that it has made any payment to Samsung, or even that Samsung has initiated an action against KLS. As such, KLS' indemnity claim is unripe, and therefore not a valid prima facie maritime claim within the meaning of Rule B. *See Sanko Steamship Co., Ltd. v. China Nat'l Chartering Corp.*, 536 F.Supp.2d 362, 366–67 (S.D.N.Y.2008) (holding that indemnity claim was not ripe until the underlying claim had been paid); *J.K. Int'l, Pty., Ltd. v. Agriko S.A.S*, No. 06 Civ. 13259(KMK), 2007 WL 485435, at

*4–5 (S.D.N.Y. Feb. 13, 2007) (declining to continue attachment based on charterer's unripe indemnity claims against cargo receivers in absence of evidence that shipowner intended to press a demurrage claim against charterer); *Bottiglieri Di Na Vigazione Spa v. Tradeline LLC*, 472 F.Supp.2d 588, 590 (S.D.N.Y.2007) (vacating order of attachment relying on indemnity claims including potential liability, fees and costs of ongoing arbitrations); *Eitzen Sealift A/S v. Cementos Andinos Dominicanos, SA*, No. 05 Civ. 4550(DC), 2005 WL 2218025, at * 2 (S.D.N.Y. Sept. 9, 2005) (holding that indemnity claim relying on "the London arbitration" where no arbitration had been initiated was too speculative to support attachment).

KLS has failed to establish that this is one of those "isolated cases" in which the Court should overrule the objection that its claims are not yet ripe, *see Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 906 (2d Cir.1965) (describing cases in which attachments had been granted notwithstanding the immaturity of the underlying action), and KLS' argument that its counterclaim is in fact one for negligence is unavailing. *See Bottiglieri*, 472 F.Supp.2d at 590–91 (rejecting attempt to characterize unripe indemnity claim as contract claim).

Because KLS' indemnity claim is unripe, KLS has not established a basis for countersecurity.

## V. CONCLUSION

For the reasons set forth above, the KLS motion to vacate the attachment and for countersecurity is denied. This action will be stayed pending the London arbitration, subject to any further motions.

It is so ordered.