**BUDISUKMA PERMAI SDN BHD, Plaintiff,**

v.

**N.M.K. PRODUCTS & AGENCIES LANKA (PRIVATE) LIMITED et al., Defendants.**

No. 08 Civ. 3802 (VM).

United States District Court, S.D. New York.

March 16, 2009.

Armand M. Pare, Jr., Nourse & Bowles, LLP, New York, NY, for Plaintiff.

Jeremy O. Harwood, Blank Rome LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

On April 22, 2008, plaintiff Budisukma Permai SDN BHD ("Budisukma") filed a complaint and applied ex parte for an order for process of maritime attachment against defendant N.M.K. Products & Agencies Lanka (Private) Limited ("NMK"), pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims ("Rule B"). *See* Fed.R.Civ.P. Supp. R. B(1). The Court granted the application. On December 10, 2008, Budisukma filed an amended complaint (the "Amended Complaint"), and on the same date, Budisukma applied ex parte for a supplemental order for process of a maritime attachment (the "Attachment") against NMK and four new defendants: N.M.K. Holdings (Private) Limited ("NMK Holdings"); N.M.K. International Trading (Private) Limited ("NMK Trading"); Naratha Agro–Industries (Private) Limited ("Naratha"); and N.M.K. Edible Oil Products SDN BHD–Malaysia ("NMK Edible Oil") (collectively, the "Alter Ego Defendants"). In the Amended Complaint, Budisukma alleges that the Alter Ego Defendants are alter egos of NMK

and are successors in interest to the business of NMK. The Court granted the application for the Attachment.

NMK now moves to vacate the Attachment pursuant to Rule E of the Admiralty Rules ("Rule E"), *see* Fed.R.Civ.P. Supp. R. E(4)(f), and the Alter Ego Defendants move to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). The Court held a conference on March 5, 2009 to discuss both motions. For the reasons stated below, NMK's motion to vacate the Attachment, and the Alter Ego Defendants' motion to dismiss the claims against them, are each DENIED.

## I. *BACKGROUND* [1]

On or about September 23, 1999, Budisukma chartered a vessel to NMK for the carriage of palm olein to Sri Lanka. The charter party ("Charter Party") provides for all disputes to be resolved through arbitration in London, with English law to apply.

Following the carriage of the cargo, and despite the London arbitration clause, NMK commenced suit against Budisukma in Sri Lanka, alleging that Budisukma caused damage and loss to the cargo in the amount of $1,880,469.99. NMK arrested the vessel in Sri Lanka and demanded that Budisukma provide a bank guarantee to release the vessel from arrest. Budisukma alleges that it has expensed $468,206.23 in Sri Lanka in bank guarantee premiums to maintain the bank guarantee. Budisukma also alleges that it has expended $65,000 in Sri Lanka in attorneys' fees and related expenses. In August 2006, the court in Sri Lanka stayed, but did not dismiss, NMK's action. NMK is challenging that ruling; Budisukma anticipates it will expend $100,000 more in Sri Lanka in bank guarantee premiums and $35,000 more in Sri Lanka in legal costs until the Sri Lanka action is dismissed.

NMK's claims for alleged cargo loss and damage were referred to arbitration in London. In the London arbitration, Budisukma filed a counterclaim against NMK, alleging that NMK breached the Charter Party by bringing its action in Sri Lanka instead of before a London arbitration tribunal, and seeking compensation for the expenses incurred in Sri Lanka, including the bank guarantee premiums, attorneys' fees, and legal costs. The Amended Complaint and application for the Attachment were filed in connection with Budisukma's claims in the London arbitration.

In addition, the Amended Complaint alleges that the Alter Ego Defendants are alter egos and successors in interest of NMK. Budisukma premises these allegations upon, among other things: the common shareholders and directors of NMK

---

1. The factual and procedural summary below derives from the parties' submissions to the Court and any exhibits attached thereto, specifically: the Amended Complaint; Memorandum of Law in Support of Motion to Vacate Order of Maritime Attachment and Garnishment Obtained Under Supplemental Rule B of the Supplemental Rules of F.R. Civ. P. For Certain Admiralty and Maritime Claims, dated February 23, 2009 ("NMK Mem."); Memorandum of Law of Defendants NMK Holdings, NMK Trading, Naratha and NMK Edible Oil as in Support of Their Motion for Dismissal, dated February 23, 2009 ("Alter Ego Mem."); Answering Memorandum in Opposition to Motion to Vacate Attachments for Alleged Failure to State a Maritime Claim, dated March 3, 2009 ("NMK Opp."), Answering Memorandum in Opposition to Motion to Vacate Attachments Against Certain Defendants on Alter Ego and Successor in Interest Basis, dated March 3, 2009 ("Alter Ego Opp."); Reply Memorandum of Law of Defendants NMK Holdings, NMK Trading, Naratha and NMK Edible Oil as in Support of Their Motion for Dismissal, dated March 5, 2009 ("Alter Ego Reply"). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

and the Alter Ego Defendants; shared business addresses and telephone numbers; a website statement that describes several of the Alter Ego Defendants as a "NMK Group of Companies"; and the common products sold by NMK and the Alter Ego Defendants.

NMK now moves to vacate the Attachment pursuant to Rules B and E, alleging that none of Budisukma's claims "are valid, independent maritime claims giving rise to a right to a Rule B attachment." (NMK Mem. at 2.) Separately, the Alter Ego Defendants move to dismiss the claims against them pursuant to Rule 12(b)(6), arguing that Budisukma has not sufficiently alleged facts in support of its alter ego contention of "domination and control." (*See* Alter Ego Mem. at 6–13.)

## II. *DISCUSSION*

### A. *NMK'S MOTION TO VACATE*

■ In order for a Rule B attachment to issue, the plaintiff must have "a valid prima facie admiralty claim against the defendant." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir.2006). "[A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Id.*; *see also* Fed.R.Civ.P. Supp. R. E(4)(f).

The Amended Complaint makes the following claims against NMK: (1) $468,206.23 in bank guarantee premiums to date; (2) $100,000 in anticipated premiums for the bank guarantee; (3) $65,000 in costs incurred to date for the Sri Lanka proceeding; (4) $35,000 in anticipated legal costs for the Sri Lanka proceedings; (5) $300,000 in costs and attorneys' fees in connection with the defense and prosecution of the London arbitration; (6) $10,000 in arbitration fees; and (7) interest on the claims for bank guarantee premiums and costs incurred to date for the Sri Lanka

proceeding. (*See* Amended Complaint ¶¶ 12–16).

■ The parties dispute whether the Court should turn to federal admiralty law or English law to determine whether Budisukma has a "valid" maritime claim. *See Beluga Chartering GMBH v. Korea Logistics Sys. Inc.*, 589 F.Supp.2d 325, 327 (S.D.N.Y.2008) ("There is some disagreement within this District as to whether the question of the claim's further 'validity' is governed by federal law or the substantive law that will govern the underlying action." (citations omitted)); *Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd.*, No. 07 Civ. 10640, 2008 WL 111003, at *3 (S.D.N.Y. Jan. 10, 2008) (discussing whether American federal law or English law should determine the validity of a claim for costs defending an arbitration in London involving a charter party governed by English law).

■ Although courts in this District are deeply divided on this issue, *compare Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*, No. 08 Civ. 5435, 2008 WL 4905460, at *3 (S.D.N.Y. Aug. 7, 2008) ("this Court believes that federal U.S. law applies to the determination at hand") *with Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 478 F.Supp.2d 532, 536–37 (S.D.N.Y.2007) (holding that "[t]he existence *vel non* of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law," and analyzing validity under English law), the Court is persuaded that federal law should govern the determination of a Rule B attachment's validity. After considering the same debate, the court in *Harley Mullion* wrote:

> This Court believes the better view is that federal law governs all questions concerning the validity of a Rule B attachment. If, in order to comply with the requirements set forth in *Aqua*

*Stoli*, a claim must be valid under the substantive law that will govern the underlying action, parties initiating or responding to a [Rule E(4)] challenge would be routinely required to litigate issues of foreign law and courts would have to probe into the merits of the underlying claim. This sort of detailed examination is inappropriate at a [Rule E(4)] hearing as it would undermine the prima facie standard and is at odds with "the limited inquiry contemplated by *Aqua Stoli*."

*Id.*, 2008 WL 4905460, at *2 (*quoting Transportes Navieros v. Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.*, 07 Civ. 3076, 2007 WL 1989309, at *3 (S.D.N.Y. July 6, 2007)). The Court agrees with this sensible analysis. Indeed, the submission of dueling declarations from the parties' English solicitors, presenting the Court in the case at hand with contrary analyses of English Statutes treatises and cases, exemplifies the complex and extensive inquiry that district courts would routinely face in resolving Rule E(4)(f) challenges—an approach that is inconsistent with "the limited inquiry contemplated by *Aqua Stoli*." The Court will thus analyze the validity of Budisukma's claim under U.S. law.

However, even if the Court were to apply English law, the Court would nonetheless find that Budisukma has a valid claim.

1. *Budisukma Has a Valid Claim Under Federal Law*

 Applying U.S. law, the Court finds that Budisukma has a valid prima facie maritime claim. Pursuant to 28 U.S.C. § 1333(1), the Court may entertain "[a]ny civil case of admiralty or maritime jurisdiction." "It has long been decided that this grant includes jurisdiction over all contracts ... which relate to the navigation, business, or commerce of the sea." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 199 (2d Cir.1992) (quotation marks and citations omitted); *see also Harley Mullion*, 2008 WL 4905460, at *3 ("In determining whether a contract gives rise to maritime jurisdiction, courts should look to 'the nature and the character of the contract,' to see 'whether it has reference to maritime service or maritime transactions,' because 'the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce.' ") (*quoting Norfolk Southern Ry. Co. v. Kirby*, 543 U.S. 14, 24–25, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004)).

 There is no serious dispute that the Charter Party is a maritime contract. Under the Charter Party, Budisukma chartered a vessel to NMK as charterer for the carriage of palm olein in bulk from one safe port to another—a classic maritime contract. *See Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir.1991) ("It is well established that a charter party agreement is a maritime contract." (citations omitted)). It is of no moment that the alleged breach relates to the Charter Party's arbitration clause; the Charter Party itself is a maritime contract, and Budisukma's counterclaim for which it sought a Rule B attachment alleges a breach of that contract. The Court therefore finds that Budisukma has a valid prima facie maritime claim under federal admiralty law.[2]

---

**2.** In addition, "[i]t is settled law in this Circuit that an attachment sought to secure an ultimate judgment confirming [an arbitration] award is a valid prima facie claim in admiralty." *Pink Goose (Cayman) Ltd. v. Sunway Traders LLC*, No. 08 Civ. 2351, 2008 WL 4619880, at *2 (S.D.N.Y. Oct. 17, 2008) (*citing Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir.1987)).

### 2. *Budisukma Has a Valid Claim Under English Law*

Even if the Court were to apply English law, the Court would arrive at the same conclusion. NMK argues that, under English law, Budisukma's claims are not claims for damages under the Charter Party and thus are not valid maritime claims. (*See* NMK Mem. at 7–9.) NMK relies on *Naias*, where the court held that the plaintiff's sole claim was for costs arising out of a London arbitration, and "[a]lthough that arbitration arises out of its alleged breach of a maritime contract, this does not make a claim for arbitration costs, with nothing more, maritime in nature." 2008 WL 111003, at *3. NMK bolsters its argument with declarations from English counsel, James King ("King"), as to whether Budisukma's claims are valid maritime claims under English law. (*See* Declaration of James King Pursuant to 28 U.S.C. § 1746, dated February 23, 2009 ("King Feb. Decl."); Declaration of James King Pursuant to 28 U.S.C. § 1746, dated March 9, 2009 ("King March Decl.")). King submits that "[u]nder English law the costs, including attorney fees, awarded to a successful party following the completion of an arbitration relating, *inter alia,* to a charter party dispute are not damages awarded for damages *under the charter party*." (King Feb. Decl. ¶ 13 (emphasis in original).)

Budisukma argues that its claim is not merely one for costs, but rather is a counterclaim for damages based NMK's bringing its action in Sri Lanka rather than the agreed-upon London arbitration tribunal.[3] (*See* NMK Opp. at 5, 8–9.) Budisukma provides a declaration from English counsel, David Morriss ("Morriss"), in support of its argument that under English law, Budisukma's counterclaim for damages

constitutes a valid maritime claim. (*See* Answering Affidavit in Response to Motions to Dismiss for Lack of Admiralty Jurisdiction and to Dismiss Claims Against Certain Defendants, dated March 3, 2009, Ex. 1 ("Morriss Decl.").) Budisukma further points out that the claim in *Naias* was only for costs and there was no damages claim, and that the English decision supporting *Naias* is inapplicable to the facts of this case, where there has not yet been an award in the London arbitration.

Having considered the experts' declarations, the Court is persuaded that the counterclaim of a breach of the Charter Party's arbitration clause is a valid maritime claim under English law. Morriss informs the Court that "there is no authority in English law to the effect that claims for damages arising from a breach of a charterparty [sic] arbitration clause will be treated any differently from claims for breach of any other charterparty [sic] clause." (Morriss Decl. ¶ 41.) In addition, the Attachment is not sought in relation to an award of damages that has already been made. NMK's reliance on King's interpretation of the English case *The Bumbesti* [1999] 2 Loyd's Rep. 481, is thus misplaced, as that opinion addressed a claim for costs relating to enforcement of an award arising out of a breach of an arbitration clause in a maritime contract. (*See* King Feb. Decl., Ex. A ¶ 22(2)-(4); Morriss Decl. ¶ 50.) Budisukma, however, does not seek enforcement of an award; it seeks damages from a breach of the principal contract—damages that have not yet been awarded. The Court therefore finds that, even if English law were to apply, Budisukma has a valid maritime claim.

---

**3.** King concedes that his first declaration did not address counterclaim damages. (*See* King March Decl. ¶ 2.)

### B. *THE ALTER EGO DEFENDANTS' MOTION TO DISMISS*

The Court addressed much of the Alter Ego Defendants' motion at the March 5 conference, but the Court also informed the parties it would take notice of the Alter Ego Defendants' reply memorandum, which was filed with the Court on the same day.

██ Having considered the Alter Ego Defendants' arguments presented at the conference and in the reply memorandum, the Court reiterates its holding that the proper standard governing the Alter Ego Defendants' motion is not Rule 12(b)(6), but Rules B and E. Budisukma sought an ex parte order for attachment, which requires the assertion of a prima facie admiralty claim. Adoption of the Alter Ego Defendants' proposed standard of Rule 12(b)(6) would effectively subsume the more lenient prima facie standard articulated by Rule B. Further, "[a]fter the requirements of Rule B have been met, and attachment has occurred, defendants have the opportunity under Rule E(4)(f) to contest the attachment of their property before the district court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 50 (2d Cir.2008); *see also Navision Shipping A/S v. Yong He Shipping (HK) Ltd.*, 570 F.Supp.2d 527, 533 (S.D.N.Y.2008) (rejecting application of Rule 12(b)(6) in favor of Rules B and E).[4]

Courts in this District are not in universal agreement as to the proper standard for determining whether a plaintiff has a valid prima facie admiralty claim—some courts hold plaintiffs to a "prima facie" standard, while others hold plaintiffs to a higher standard of "reasonable grounds" or a "fair probability." *Compare Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.*, No. 08 Civ. 8817, 2009 WL 464202, at *2 (S.D.N.Y. Feb. 24, 2009) ("The standard for determining whether it is appropriate to seize the property of a[n] entity alleged to be a maritime defendant's alter ego is a 'reasonable grounds' standard. . . ."); *Wajilam Exps. (Singapore) Pte., Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275, 278–79 & n. 5 (S.D.N.Y.2006); *with Penguin Maritime Ltd. v. Lee & Muirhead Ltd.*, 588 F.Supp.2d 522, 525–26 (S.D.N.Y. 2008) ("The majority of courts in the Southern District of New York have held that in assessing whether plaintiff has made out 'a prima facie admiralty claim' as *Aqua Stoli* requires, courts should apply a prima facie standard rather than the more demanding 'reasonable grounds' or 'fairly probable' standard."); *Padre Shipping, Inc. v. Yong He Shipping*, 553 F.Supp.2d 328, 331–32 (S.D.N.Y.2008); *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, No. 07 Civ. 0893, 2008 WL 2546180, at **3–4 (S.D.N.Y. June 19, 2008); *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06 Civ. 15375, 2007 WL 831810,

---

4. The Alter Ego Defendants argue that the merits of Budisukma's alter ego allegations are "squarely before this Court." (Alter Ego Reply at 6.) The Court disagrees. The current question facing this Court is whether Budisukma has a valid prima facie admiralty claim against the Alter Ego Defendants and nothing more. The proper time for the Alter Ego Defendants to raise arguments as to the merits of the alter ego allegations is after the London arbitration is complete and Budisukma has sought confirmation of an arbitral award.

The Alter Ego Defendants cite to *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. or Panama*, 312 F.2d 299, 301 (2d Cir.1963), for the proposition that an arbitral award may not be confirmed against a non-party to an arbitration. (Alter Ego Reply at 7–8.) The Court offers no opinion on the eventual applicability of *Orion Shipping* after Budisukma seeks confirmation of an arbitral award; it is enough to determine that such an inquiry is presently premature.

at *3 (S.D.N.Y. March 15, 2007) (rejecting *Wajilam Exps.* and applying prima facie standard for determining alter ego allegations).

 This Court agrees the with majority of courts in this District, and finds that a plaintiff need only make a prima facie showing of alter ego liability to avoid vacatur of a Rule B attachment. To meet this burden, a plaintiff must nonetheless "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Rule E(2)(a); *see also Penguin Maritime*, 588 F.Supp.2d at 526.

 Further, the Court is persuaded that Budisukma satisfied its prima facie burden in pleading that the Alter Ego Defendants are alter egos of NMK. "In admiralty disputes, federal courts apply federal common law when analyzing corporate identity." *Hawknet Ltd. v. Overseas Shipping Agencies*, No. 07 Civ. 5912, 2008 WL 1944817, at *3 (S.D.N.Y. April 29, 2008) (citation omitted). The Second Circuit has identified several relevant factors in evaluating the sufficiency of alter ego claims:

(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee

of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 63 (2d Cir.2001); *see also Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*, 486 F.Supp.2d 261, 271–72 (S.D.N.Y.2007). This list is not exhaustive, nor is there a minimum number of factors that must be satisfied. Rather, the guiding principle is whether piercing the corporate veil "would achieve an equitable result." *See Williamson*, 542 F.3d at 53 ("There is no set rule as to how many of these factors must be present to warrant piercing the corporate veil and courts have considered additional factors as well. Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil has been that liability is imposed when doing so would achieve an equitable result." (quotation marks omitted)).

Budisukma alleges that a website maintained by "NMK Group of Companies" lists that group as including NMK, NMK Trading, Naratha, and NMK Edible Oil. (Amended Complaint ¶ 19.) The Alter Ego Defendants sell the same products: palm oil and palm oil-based products. (*Id.* ¶¶ 19, 21, 23, 25.) NMK and the Alter Ego Defendants have common office addresses and telephone numbers, and a common, three-person core of directors and shareholders. (*See id.* ¶¶ 19–28 & Exs. 1–5; Alter Ego Opp. at 3–8.) The three individuals alleged to be the directors and/or shareholders of the Alter Ego Defendants—and appear to be related—are Narayana Mudiyanselage Manjula Narayana ("Narayana"), Narayana Mudiyanselage Indra Padmakanthi, and Narayana Cheranika Nilakshi Geekiyana. (*See* Amended Complaint Exs. 1–4). The Alter

Ego Defendants are not corporations with many directors or shareholders; rather, they are closely owned and directed by what appears to be the same group of people (particularly Narayana). (*See id.*) Budisukma alleges that NMK Trading, Naratha, and NMK Holdings are alter egos of each other and NMK, and are dominated and controlled by the common directors and/or shareholders.[5] (*Id.* ¶¶ 22, 24, 27–28.) Finally, at the time of the filing of the Amended Complaint, no funds had been attached stemming from the first attachment since April 2008, leading Budisukma to allege that the other companies in the "NMK Group of Companies" are successors in interest of NMK. (*Id.* ¶ 20.) NMK's allegations are sufficiently particular under Rule E(2)(a), and are supported by exhibits attached to the Amended Complaint.

Other courts in this District have found that similar allegations satisfied the prima facie standard of alleging alter ego liability. *See, e.g., Pink Goose (Cayman),* 2008 WL 4619880, at **1–2; *Goodearth Maritime Ltd. v. Calder,* No. 08 Civ.2082, 2008 WL 2856533, at *2 (S.D.N.Y. July 21, 2008); *C. Transport Panamax,* 2008 WL 2546180, at **3–4; *SPL Shipping,* 2007 WL 831810; *Hawknet,* 2008 WL 1944817, **3–5; *see also Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.,* No. 07 Civ. 4546, 2007 WL 3255823, at **3–6 (S.D.N.Y. Oct. 30, 2007).

For the reasons stated above, as well as those provided at the March 5 conference, the Court finds that Budisukma has sufficiently pled a prima facie claim for alter ego liability of the Alter Ego Defendants.

## III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Docket No. 13) of N.M.K. Products & Agencies Lanka (Private) Limited to vacate the Order of Attachment is DENIED; and it is further

**ORDERED** that the motion (Docket No. 15) of N.M.K. Holdings (Private) Limited, N.M.K. International Trading (Private) Limited, Naratha Agro–Industries (Private) Limited, and N.M.K. Edible Oil Products SDN BHD–Malaysia to dismiss the Amended Verified Complaint filed by Budisukma Permai SDN BHD, is DENIED.

SO ORDERED.

---

5. The Alter Ego Defendants direct the Court to a paragraph of the Amended Complaint that states that "[t]hese shareholders and directors and NMK Holdings dominate and control the business of Defendants." (*Id.* ¶ 27.) The Alter Ego Defendants conclude that Budisukma alleges that NMK Holdings or its shareholders and directors dominate and control the Alter Ego Defendants, but do not dominate or control NMK. (*See* Alter Ego Br. at 3–4; Alter Ego Reply at 1.) However, the next paragraph states that "NMK Trading, Naratha Agro, NMK Edible Oils, NMK Products & Agencies, and NMK Holdings should have liability as alter egos" of NMK. (Amended Complaint ¶ 28.) Reading the Amended Complaint in its entirety, and construing all inferences in Budisukma's favor, the Court finds that Budisukma sufficiently alleges that the Alter Ego Defendants are alter egos of NMK.